**James E. LEWIS and Thomas G. Lewis, Appellants,**

v.

**AMERICAN FAMILY INSURANCE GROUP, Appellee.**

Supreme Court of Kentucky.

Sept. 16, 1977.

Joe G. Leibson, Louisville, for appellants.

Kenneth L. Anderson, Woodward, Hobson & Fulton, Louisville, for appellee.

LUKOWSKY, Justice.

This is an appeal from a summary judgment which held that James and Thomas Lewis were not entitled to recover under the uninsured motorist provisions of two automobile liability insurance policies. We reverse.

On July 3, 1972 the Lewis brothers were seriously injured while riding in James' car when it collided with an uninsured motor vehicle. The uninsured motorist was a Kentucky resident, and the collision occurred in Kentucky. The Lewises were residents of Indiana. The insured vehicles were to be garaged principally in Indiana. The policies were sold and delivered in Indiana. They filed suit in the Jefferson Circuit Court against the uninsured motorist and the American Family Insurance Group, which had written both policies.

James, at one time, had a liability insurance policy on his automobile. American contends that this policy lapsed on June 9, 1972 for non-payment of the renewal premium. James admits that he never paid the premium. He states that sometime after June 9 he received a renewal premium notice and that he had his brother, Thomas, call American's local agent the next day to arrange for the extension of coverage. According to Thomas, the local agent told him that the policy would continue in force and that James should pay the premium by July 9. The Lewises further contend that the policy continued in force because American did not comply with the statutory formalities for terminating the insurance policy.

The second insurance policy belonged to Marshall Lewis. Marshall is the uncle and guardian of James and Thomas, both of whom lived with Marshall in his home. The uninsured motorist provision of both insurance policies defined the "insured" to be the named insured and relatives residing with the named insured provided that these relatives do not own a passenger automobile. American contends that both Lewis brothers fail to meet the definition of an insured because they both own automobiles. Thomas disputes this contention by stating that at the time of the collision he is not sure whether title to his automobile had actually passed to him. He also says that the car was not driveable and should, therefore, not be considered to be a "passenger automobile" within the meaning of the insurance policy. His argument is that the purpose of this exclusion is to encourage persons who own automobiles to procure their own liability insurance, but people do not ordinarily insure automobiles that are not driveable.

Marshall's policy also excluded from uninsured motorist protection persons who are injured while occupying a motor vehicle, other than the insured vehicle, owned by the named insured or a resident of his household. American contends that since the Lewis brothers were riding in James' car at the time of their injury, they can not recover under Marshall's policy.

I

The threshold issue which must be decided is whether Indiana or Kentucky law ought to be applied in this case. Traditionally the rule has been that the validity of a contract is to be determined by the laws of the state in which it was made, while the remedies to be enforced are those provided by the state in which suit is brought. *Fry Bros. v. Theobold,* 205 Ky. 146, 265 S.W. 498 (1924). Such a mechanical approach is no longer favored. The modern test is "which state has the most significant relationship to the transaction and the parties." Re-

statement of Conflict of Laws 2d, sec. 188 (1971). Using this test, in most cases the law of the residence of the named insured will determine the scope of his automobile liability insurance policy. Section 193 of the Restatement of Conflict of Laws 2d, states:

"Contracts of Fire, Surety or Casualty Insurance

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in sec. 6 to the transaction and the parties, in which event the local law of the other state will be applied."

Because the insurance contracts in this case were entered into in Indiana between Indiana parties and concerned automobiles which were licensed and garaged in Indiana, we are of the opinion that Indiana law should govern the rights and liabilities of the parties under these contracts. *Allstate Insurance Co. v. Napier,* Ky., 505 S.W.2d 169 (1974).

## II

■ We now apply Indiana law to the insurance policy between James and American. It was effective from January 9, 1972 to June 9, 1972. At that time, it could be renewed by the named insured's paying another premium. The payment was for a renewal of the insurance policy and was not a mere installment due on a continuing insurance policy. James cites Indiana statutes which require the insurer to notify the insured of a cancellation of the policy or of its intention not to renew the policy. Ind. Stat. IC 27–7–6–5; IC 27–7–6–6. However, both statutes explicitly state that they do not apply when a policy is not renewed for non-payment of a premium. Counsel for the appellants have called no Indiana statutes, regulations, or cases to our attention which require affirmative conduct on the part of the insurer to relieve itself from the terms of an insurance policy which the insured has failed to renew by paying the premium. An independent search has revealed no such requirement. It is noted in Blashfield, Automobile Law and Practice, sec. 293.2:

"Automobile insurance policies are frequently made for short periods, such as six months or a year, with provisions for renewal for a like term on payment and acceptance of the premium prior to the expiration of the current policy period. Unless the policy contains a grace period it will expire according to its terms if not renewed by payment of the premium provided by the policy, in the absence of any requirement for affirmative action to terminate it."

We conclude that James let his policy lapse by failing to pay the renewal premium and that American was under no duty to notify James that the policy was no longer in force.

■ But the question remains, did the representation of American's local agent that the policy would continue in force and that James could pay anytime prior to July 9 reinstate the policy? Of course, for purposes of this appeal from a summary judgment, we must assume that the conversation occurred as related by Thomas. Because the conversation occurred at least two weeks after the policy lapsed the issue is really whether the conversation constituted an offer and acceptance of a new insurance policy on the same terms as the one which expired.

Indiana law on the effect of an agent's representations that an insurance policy is in force (when in fact it is not) has been summarized in *Federated Mutual Implementation & Hardware Ins. Co. v. Bunch,* 455 F.2d 247 (7th Cir. 1972). It appears that Indiana is quite protective of those to whom representations have been made that they are insured. In *West v. National Casualty Co.,* 61 Ind.App. 479, 112 N.E. 115 (1916) it was stated: (1) if an insurance company by any agreement implied from its acts or conduct leads the insured to honestly believe that it would receive late pay-

ment of premiums and thereby keep his policy alive at all times, then the company will be estopped from asserting a forfeiture on account of delay in the payment of premiums; (2) an agent of an insurance company having ostensible authority to solicit applications and receive first premiums binds his principal by any acts within his apparent authority and he is presumed to have the power to waive immediate payment and extend credit for their payment; (3) where the policy provides that any waiver of its provisions must be endorsed on the policy, such may itself be waived by express agreement or by conduct; and (4) the fact that a payment is made after an injury is sustained is immaterial if an agent, acting with apparent authority, extends the time of payment to a point beyond the date of injury.

While this case and the others discussed in *Federated* do not present facts identical to those in the case at bar, we find them determinative of the issue presented in this case. It is true that the cases relied upon are cases in which a policy was not permitted to be cancelled where the agent had related to the insured that a late payment would be permissible. This is somewhat different from the situation here, in which the policy has expired and is then reissued by the agent's representations. However, the language of the *West* case is broad enough to encompass this situation. A general agent is generally deemed to be authorized to waive prepayment of initial premiums. Appleman, Insurance Law and Practice, sec. 8452 (1944). See also Anno: "Temporary Automobile Insurance Pending Issuance of Policy," 12 ALR 3d 1304 in which it is stated that a binder may be oral (sec. 5), and that payment need not be made to activate the binder so long as there has been an agreement to pay (sec. 9). If the trier of the facts believes that the conversation occurred as described, there was a policy of insurance in effect on the date of the accident.

### III

█ The next issue is whether the following exclusion from uninsured motorist coverage is valid under Indiana law:

"This endorsement does not apply:

(a) to bodily injury to an insured while occupying a motor vehicle (other than an 'insured vehicle' as defined above) owned by the named insured or a resident of his household."

It is not disputed that at the time of their injury the Lewis brothers and Marshall were residents of the same household and that they occupied a vehicle owned by James. However, the law in Indiana is abundantly clear that this type of exclusion from uninsured motorist coverage impermissibly narrows the scope of the uninsured motorist statute. *Cannon v. American Underwriters Inc.,* 150 Ind.App. 21, 275 N.E.2d 567 (1971); *State Farm Mutual Automobile Insurance Co. v. Robertson,* 156 Ind.App. 149, 295 N.E.2d 626 (1973); *Vantine v. Aetna Casualty and Surety Co.,* 335 F.Supp. 1296 (N.D.Ind.1971). Thus this exclusion is invalid.

█ It now becomes vital to determine whether James and Thomas were "insureds" within the meaning of these insurance policies. The policies define an insured to be, in effect, any relative living in the named insured's home who does not own a private passenger automobile. The effect of this definition is to deny uninsured motorist coverage to members of the named insured's household who own automobiles but do not insure them. It appears that the Lewis brothers are not insureds within this definition. Under Indiana law there is no requirement that relatives living in the same household must be covered by each other's automobile liability insurance policies. In Indiana, automobile liability insurers must provide coverage for the owner of the automobile being insured and for persons using the automobile with his permission. Ind.Stat. IC 27-1-13-7. The insurer must further provide uninsured motorist protection within the liability policy *for all persons insured thereunder.* Ind.Stat. IC 27-7-5-1. This statute says that anyone who is an insured must be afforded uninsured motorist protection, but it does not

expand the class of persons that must be considered to be "insureds." The conclusion is inescapable that Indiana law did not require American to include the Lewis brothers as insureds in its automobile liability policy with Marshall or Thomas in its policy with James. Their rights under these insurance policies are, therefore, governed solely by the contracts.

This result is consistent with the *Cannon* case, supra, in which the Indiana Court of Appeals held that an insurer could not limit recovery on an uninsured motorist policy to those who were occupying insured vehicles at the time of their injury. The exclusion impermissibly narrowed the scope of uninsured motorist coverage. The daughter of the named insured was permitted to recover under her mother's policy because *by the terms of the contract* the daughter was an "insured." In distinguishing *Ely v. State Farm Mutual Automobile Insurance Co.,* 148 Ind.App. 586, 268 N.E.2d 316 (1971) (a case upholding a clause in an insurance policy requiring a "hit" before the uninsured motorist provision would pay for a "hit and run") the court stated:

> ". . . In addition to protecting persons legally entitled to recover damages because of injury by provably uninsured motorist automobiles, the coverage afforded in *Ely* also gave protection to persons injured by drivers of 'hit and run automobiles,' such automobiles upon certain attached conditions being included in the policy's definition of 'uninsured automobile.' Thus *Ely* deals not with a statutorily required uninsured motorists coverage, but with additional coverage, a hit and run coverage, which no Indiana law requires."

We believe that an Indiana court would find *Ely* controlling and would hold that the Lewis brothers, assuming they owned passenger automobiles at the time of the collision, were not "insureds" as defined by Marshall's policy and that Thomas was not an "insured" as defined by James' policy.

■ However, there is an issue of fact remaining as to whether Thomas actually owned a passenger automobile. From his deposition it is not clear whether he had actually obtained title to the vehicle he allegedly owned at the time of his injury. Furthermore, it is not clear whether the vehicle he owned was driveable. One does not ordinarily carry liability insurance on an automobile that is not to be driven. Therefore, a car that has been retired from service for an indefinite time into the future should not be considered to be a "passenger automobile" within the meaning of this insurance policy.

## IV

Reversal and remand are required because American has failed to establish by evidence of the necessary certitude the non-existence of genuine issues of material fact. *Barton v. Gas Service Company,* Ky., 423 S.W.2d 902 (1968). The issues for trial in addition to liability of the uninsured motorist and damages, are:

1.  Did an agent of American represent to Thomas that James's insurance policy would continue in force and that James could have until July 9, 1972 to pay his renewal premium?
2.  Did Thomas own a passenger automobile on July 3, 1972 that he had not retired from service for an indefinite time into the future?

If the answer to number 1 is yes, James may recover on his policy. If the answer to number 2 is no, Thomas may recover on Marshall's policy. If the answer to number 1 is yes and the answer to number 2 is no, Thomas may recover on both James' and Marshall's policies.

The judgment is reversed and the cause is remanded for further proceedings consistent herewith.

All concur.