624 So.2d 84 (1993)
Betty L. O'ROURKE and Daniel O'Rourke
v.
COLONIAL INSURANCE COMPANY OF CALIFORNIA.
No. 91-CA-169.
Supreme Court of Mississippi.
September 2, 1993.
Dana J. Swan, Chapman Lewis & Swan, Clarksdale, for appellant.
Marc A. Biggers, Upshaw Williams Biggers Page & Kruger, Lonnie D. Bailey, Upshaw William Firm, Greenwood, for appellees.
Before DAN M. LEE, P.J., PITTMAN and JAMES L. ROBERTS, Jr., JJ.
JAMES L. ROBERTS, Jr., Justice, for the Court:
The O'Rourkes, residents of Tennessee, were involved in an accident with an uninsured motorist ("UM") on April 29, 1988 in DeSoto County. The 1988 Oldsmobile they were driving was insured by State Farm, with UM coverage of $50,000/$100,000. The O'Rourkes also owned a 1981 Toyota, insured by Colonial with UM coverage of $100,000/$300,000. The Colonial policy did not cover the Oldsmobile and contained an "owned vehicle exclusion clause," providing that coverage did not extend to persons injured in a vehicle owned by the insured but not protected by the Colonial policy. The O'Rourkes brought suit in the DeSoto County Circuit Court against both State Farm and Colonial. Colonial moved for summary judgment, on the grounds that under Mississippi conflict of law rules, Tennessee law applied to the question of whether coverage was available to the O'Rourkes under the Colonial policy, and under Tennessee law, Colonial was entitled to dismissal. The court granted summary judgment for Colonial, and the O'Rourkes appealed. Finding that Colonial was correctly dismissed from the suit, we affirm.

*85 A

FACTS AND PROCEDURAL HISTORY
On April 29, 1990, Betty and Daniel O'Rourke were returning home to Memphis after dining at the Conestoga steakhouse in DeSoto County. Driving north on Highway 51, they were involved in a collision with DeSoto County resident Angela Worley, who proved to be an uninsured motorist. Both O'Rourkes were injured and taken to Methodist Central Hospital in Memphis.
At the time of the accident, Betty O'Rourke was driving a 1988 Oldsmobile which she and her husband owned jointly. The Oldsmobile was insured by State Farm Mutual Automobile Insurance Company with a policy that provided UM coverage of $50,000/$100,000 and medical payment benefits.[1] The O'Rourkes also possessed a 1981 Toyota, insured by Colonial Insurance Company, by a policy which provided for coverage of $100,000/$300,000.[2] Daniel O'Rourke paid the premiums for the Colonial policy either through the Morton Insurance Agency, Inc., located in Bartlett, Tennessee, or directly to Colonial at its Norcross, Georgia office.
The Colonial policy included an "owned vehicle exclusion clause," which read in part:
Those Not Protected
* * * * * *
Anyone occupying a motor vehicle owned by you or furnished for your regular use and not insured under this insurance is not protected by this insurance.
(emphasis in the original).
On March 13, 1990, the O'Rourkes filed a complaint in the DeSoto County Circuit Court against State Farm and Colonial, alleging that Worley's negligence (failing to yield the right of way at an intersection) had been the proximate cause of the accident. They demanded judgments of $200,000 in UM benefits for Betty O'Rourke, and $200,000 in UM benefits, together with medical payment benefits for Daniel O'Rourke. Colonial moved for summary judgment on December 3, 1990, claiming that the issue of whether uninsured motorist coverage was available to the O'Rourkes under the Colonial policy was governed by Tennessee law, and that under Tennessee law, Colonial was entitled to dismissal. The circuit judge held that under Boardman v. United States Automobile Association, 470 So.2d 1024 (Miss. 1985), cert. den. 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985), the court was bound to apply the "center of gravity" test to determine whether Mississippi or Tennessee law would apply. Finding the Tennessee contacts greater, the court applied Tennessee law, under which the owned vehicle exclusion clause was valid, and the O'Rourkes not entitled to recover from Colonial. The court granted summary judgment for Colonial, and dismissed the cause with prejudice on January 22, 1991. The O'Rourkes filed an appeal on February 15, 1991.

B

DISCUSSION OF ISSUE

THE TRIAL COURT ERRED IN HOLDING THAT TENNESSEE LAW, RATHER THAN MISSISSIPPI LAW, CONTROLS STACKING OF UNINSURED MOTORIST POLICIES FOR AN ACCIDENT IN MISSISSIPPI INVOLVING A TENNESSEE POLICY ISSUED TO A TENNESSEE RESIDENT.

Conflict of Law
The effect of the owned vehicle exclusion clause in the policy on the Toyota is to bar recovery under the Colonial policy, or, as the O'Rourkes put it, to prevent "stacking" of the Colonial and State Farm policies. The O'Rourkes concede that under Tennessee law, the owned vehicle exclusion clause is valid and enforceable. See Dockins v. Balboa Ins. Co., 764 S.W.2d 529 (Tenn. App. 1989); Graves v. Tennessee Farmers Mutual Ins. Co., 671 S.W.2d 841 (Tenn. App. 1984). They also concede that under Boardman v. *86 United States Auto. Assn., 470 So.2d 1024 (Miss. 1985), Tennessee's substantive law "would control most aspects of this case." However, the O'Rourkes argue that the Mississippi courts will not apply the law of foreign jurisdictions if to do so would be contrary to the public policy of Mississippi. They contend that Mississippi public policy strongly favors stacking of uninsured motorist policies, and that owned vehicle exclusion clauses are unenforceable under Mississippi law. See Lowery v. State Farm Mutual Automobile Ins. Co., 285 So.2d 767 (Miss. 1973). Therefore, where there is a conflict of law, and Tennessee law would prohibit stacking of UM coverage, the Court should decline to apply it, and apply Mississippi law instead.
Colonial argues that where a conflict of law arises, Mississippi courts apply the "center of gravity" test to determine which state's law applies. In this case, application of the test shows that Tennessee's contacts prevail; therefore, Tennessee law should be applied to the case's substantive issues. The owned vehicle exclusion clause in the Colonial policy is valid and enforceable under Tennessee law, and, Colonial contends, nothing in Mississippi's public policy concerning UM law is "so deeply ingrained ... as to compel this Court to ignore Tennessee law." Colonial also argues that this case is directly controlled by Boardman v. United States Auto. Assn., an action to recover UM benefits under an automobile insurance policy containing an owned vehicle exclusionary clause, issued in Nebraska to a Nebraska insured, for an accident occurring in Mississippi. In Boardman, the Court applied the center of gravity test, found that Nebraska had the most significant contacts, and applied Nebraska law to the outcome-determinitive question of whether the insured's son was covered by the policy. The Court also held that Mississippi's public policy was not so strong as to override the reasonable expectation of the parties that Nebraska law would apply to the insurance contract.
Colonial is, in a word, correct. Boardman controls, and Tennessee law applies. This Court modified its choice of law rules in 1968 by adopting the "center of gravity" test in Craig v. Colombus Compress & Warehouse Co., 210 So.2d 645, 649 (Miss. 1968) and Mitchell v. Craft, 211 So.2d 509, 512 (Miss. 1968). Where a question arises as to whether the substantive rules of decision should be Mississippi's or those of another state, the center of gravity test directs a determination of which state has the most substantial contacts with the parties and the subject matter of the action. See Crowe v. Smith, 603 So.2d 301, 307 (Miss. 1992); Newman v. Newman, 558 So.2d 821, 823 (Miss. 1990); Dees v. Hallum, 721 F. Supp. 789, 790 (N.D.Miss. 1989); Boardman, 470 So.2d at 1031. This Court has cited with approval Section 188 of the Restatement (Second) of Conflicts of Law (1971), which concerns contract cases generally and identifies the following contacts to be considered in determining the applicable law:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
Section 188, Restatement (Second) of Conflicts of Law (1971), cited in Boardman, 470 So.2d at 1032.[3]
In Boardman, the insurance policy covered three automobiles, each of which was principally garaged in Nebraska. The insured's son was involved in an accident in Mississippi with an uninsured Mississippi driver. Applying the center of gravity test to the question of whether the son was an "insured" under his father's policy having the right to sue for UM benefits, we held that Nebraska law applied. In doing so, we noted that (a) the place of contracting was in Nebraska, (b) the place of negotiation of the contract was in *87 Nebraska, (c) the place of performance was substantially in Nebraska, (d) the location of the subject matter of the contract, i.e., the principal location of the risks insured against was in Nebraska, and (e) the residence of the insured was in Nebraska. Boardman at 1034.
In the case at bar, the following Tennessee contacts are relevant: (a) the O'Rourkes were both residents of Tennessee (b) the insurance policy was issued by Colonial through an insurance agency located in Bartlett, Tennessee, (c) the premiums paid to Colonial either through a Tennessee agent or directly to Colonial in Georgia. On the other hand, the Mississippi contacts are (a) the accident occurred in Mississippi, and (2) Angela Worley, the uninsured motorist, was a resident of Mississippi. In Boardman, we held that with respect to the question of coverage, the fact that the accident occurred in Mississippi was "fortuitous and hence irrelevant." Id. at 1036. There is nothing to distinguish the O'Rourkes' accident in this respect, and therefore the fact that their accident took place in Mississippi is similarly unhelpful to their cause. As for the Mississippi residence of Angela Worley, we repeat our statement in Boardman that we are "wholly unable to see how the residence of the uninsured motorist could have anything to do with the determination of the applicable rules of substantive law ..." Id. at 1037.[4]
In short, under the center of gravity test, Tennessee has the most substantial contacts with the parties and the subject matter of the action. Therefore, Tennessee law must be applied to the question of whether UM coverage is available to the O'Rourkes under the Colonial policy.
Tennessee Law
The Tennessee UM Act provides in part:
With respect to bodily injury to an insured while occupying a motor vehicle owned by such insured, only the limits of uninsured motorist coverage on the vehicle in which the insured was an occupant shall apply. The limits of uninsured motorist coverage shall not be increased because of multiple motor vehicles whether covered under a single policy or multiple policies, and in no event shall recovery from all policies and bonds, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.
Tenn. Code Ann. § 56-7-1201 (emphasis added). The O'Rourkes were injured while occupying the Oldsmobile, owned by them. Under the Tennessee UM Act above, only the limits of the UM coverage on that Oldsmobile apply  that is, the O'Rourkes are entitled only to the UM coverage under the State Farm policy, and not the UM coverage under the Colonial policy on the Toyota.
Moreover, Tennessee UM law permits insurers to provide coverage which "may include such terms, exclusions, limitations, conditions, and offsets, which are designed to avoid duplication of insurance and other benefits." Tenn. Code Ann. 56-7-1205. In other words, Tennessee allows insurers to insert clauses to prevent stacking. This provision of the Code has been upheld by Tennessee courts. See State Automobile Mutual Insurance Co. v. Cummings, 519 S.W.2d 773 (Tenn. 1975); Terry v. Aetna Casualty and Surety Co., 510 S.W.2d 509 (Tenn. 1974). Tennessee courts have specifically upheld owned vehicle exclusion clauses. See Dockins v. Balboa Ins. Co., 764 S.W.2d 529 (Tenn. App. 1989); Graves v. Tennessee Farmers Mutual Ins. Co., 671 S.W.2d 841 (Tenn. App. 1984).
In short, under the applicable Tennessee law, the owned vehicle exclusion clause in the *88 Colonial policy was valid and enforceable. Therefore, the O'Rourkes were not entitled to recover UM benefits under that policy.

Public Policy Exception?
The O'Rourkes direct our attention to Boardman and other cases in which this Court has held that Mississippi courts will not enforce the substantive law of a foreign jurisdiction if to do so would be offensive to the deeply ingrained or strongly felt public policy of the state. See McDaniel v. Ritter, 556 So.2d 303, 316 (Miss. 1989); Laskosky v. Laskosky, 504 So.2d 726 (Miss. 1987); Boardman, 470 So.2d at 1038. On such principle, this Court has refused to enforce Louisiana's contributory negligence rule, preferring Mississippi's comparative negligence statute. See, e.g., Mitchell v. Craft, 211 So.2d 509, 513-516 (Miss. 1968). The O'Rourkes contend that Mississippi law generally favors the finding of coverage under UM insurance, and that this Court has held that the Uninsured Motorist Act must be liberally construed to achieve its purpose of providing coverage for innocent motorists injured by uninsured drivers. They argue that stacking of UM coverage is "thoroughly ingrained in Mississippi law," and that this Court has resisted attempts to prevent stacking. Since enforcement of an anti-stacking clause would violate Mississippi's public policy, Mississippi courts should apply their own law, rather than that of Tennessee, to this case. The O'Rourkes acknowledge that Boardman held that enforcement of an owned vehicle exclusionary clause is not precluded by any Mississippi public policy. However, they argue that their case is distinguishable from Boardman in that Boardman did not involve stacking.
Colonial argues that this is not a stacking case, as that term was explained in Wickline v. U.S. Fidelity and Guar. Co., 530 So.2d 708 (Miss. 1988).[5] Colonial also contends that whether or not there is a stacking question in the case at bar, Boardman controls.
Again, Colonial is correct. Boardman answered the question posed by the case at bar: does Mississippi public policy prevent the enforcement of an owned vehicle exclusion clause, executed by non-residents and valid in the "center of gravity" state, although invalid in Mississippi? The answer in Boardman was no, as it must be here. As we stated in Boardman:
This question is not, what would be the public policy of this state regarding an exclusion such as that claimed here were the insureds Mississippians. Rather, the question is whether we have a public policy which is so strong that it would override the reasonable expectation (if they had thought about it) of both USAA and Henry Boardman that at the very least the coverage questions arising with respect to their contract would be governed by the law of Nebraska. We say all of this in the context of Lowery v. State Farm Mutual Automobile Insurance Co., 285 So.2d 767 (Miss. 1973), which holds that enforcement of an owned vehicle exclusionary clause comparable to that with which we are here concerned, where included in a policy issued in this state, is precluded under our Uninsured Motorist Statute.
* * * * * *
(i)t seems clear to us that the rule of law emanating from Lowery though reflective of the public policy of this state, is not one expressive of a public policy so strong that under these facts a countervailing Nebraska rule should be ignored. This is particularly so when we recall that application of the factors listed in Restatement § 188(2) point so strongly to Nebraska as the state which ought to furnish the rule of decision *89 governing adjudication of the coverage question here presented.
When all is said and done, we are concerned with an insurance contract made and entered into in Nebraska between a Nebraska insured and nationwide insurer based in San Antonio, Texas. However public policy considerations prevailing in this state may affect an insurance contract written in Mississippi, we must in fairness recognize that we have no substantial interest in the upholding of the public policy of this state, manifest through our Uninsured Motorist statute, when the question is: who is an insured under a Nebraska insurance contract.
Boardman, 470 So.2d at 1038-1039. Similarly, the case at bar concerns an insurance contract made and entered into in Tennessee, between a Tennessee insured and an insurer based in Georgia. Application of the Restatement § 188(2) factors point strongly in favor of Tennessee as the state which ought to furnish the rule of decision governing adjudication of the coverage question presented. The O'Rourke's argument that stacking is so favored by this state's law and public policy as to justify ignoring countervailing Tennessee law is unpersuasive. While it is true that this Court favors stacking of UM coverage where such coverage is available, nothing in this Court's decisions suggest that this preference is so strong as to warrant ignoring the Tennessee law which must, under our conflict of law rules, determine which coverage is available to the O'Rourkes.

C

CONCLUSION
This case's "center of gravity" lies in Tennessee, and so we apply that state's law. The owned vehicle exclusion clause in the Colonial insurance policy on the O'Rourkes' Toyota, which precludes recovery of UM benefits for injuries sustained in other vehicles, is valid and enforceable in Tennessee. Mississippi public policy does not preclude enforcement of such clauses. Because UM coverage was not available to the O'Rourkes under the Colonial policy, Colonial was entitled to dismissal from the suit. We affirm the grant of summary judgment in Colonial's favor.
AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and PITTMAN, BANKS and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion joined by SULLIVAN, J.
McRAE, Justice, dissenting:
Insofar as it has been applied to Uninsured Motorists policies in insurance contracts, the "center of gravity test" should be laid to rest. Like Brer Rabbit's Tar Baby, the matter of raising a choice of laws question whenever an out-of-state motorist is injured in an accident occurring in Mississippi grows larger and more cumbersome each time we tackle it. Accordingly, because the majority's application of Tennessee law in this case flies in the face of our uninsured motorist statutes, I dissent.
We live in a mobile society. Insurers are well aware that their insureds will travel in other states. Therefore, most insurance policies written today provide liability and uninsured motorist coverage in every state within the continental United States. Most, likewise, provide that when any provision of the insurance contract is in conflict with the laws of the state where an accident occurs, that provision will be modified in conformity with applicable state law. Miss. Code Ann. § 83-11-101, et seq. (1991) provides that no automobile liability insurance policy shall be sold in this state after January 1, 1967, unless it contains an endorsement for uninsured motorist coverage. Our laws provide that an injured insured may aggregate his UM policies. Any insurance contract applicable to a vehicular accident which occurs in Mississippi must conform to the statute, as well to our case law interpreting it.
Colonial Insurance Co. of California is licensed to do business in Mississippi and has agents in this state. Its regional office, where the O'Rourkes often sent their premium payments, is located in Georgia. Anaheim, California, serves as its home office and principal place of business. Clearly, Colonial is no stranger to the laws of Mississippi, *90 Georgia or California. Under these facts, application of the center of gravity test is not as cut and dried as the majority would have us think. Why is Tennessee law applicable rather than Mississippi, Georgia or California law? Colonial's contact with these states is no more fortuitous than with Tennessee.
Each time we take a strike at the Tar Baby, it grows and grows. Just when we think we have achieved some understanding of our uninsured motorist law and provided coverage for any vehicle traveling through this state, a decision such as this is rendered, and the Tar Baby again grows bigger and bigger. One day, the once simple legislative directive for uninsured motorist coverage will be so large and overwhelming, no one will be able to make sense of it.
In Boardman v. United Services Automobile Ass'n, 470 So.2d 1024 (Miss. 1985), we found that Nebraska law was applicable to an uninsured motorist policy sold to a resident of Nebraska by a Texas insurer, despite the fact that the accident occurred in Mississippi and the insured had been living in Mississippi for more than ten months. However, the Boardman majority misconstrued the crucial fact that USAA has no agents. Therefore, the insurance contract would have been negotiated, issued and mailed from USAA's home office in San Antonio, Texas. Since all of USAA's policy decisions and contracts originated in its home office, it could well be argued that perhaps Texas law should have been applied.[1]
Like uninsured motorist coverage, workers' compensation is a remedial and beneficent social policy mandated by the legislature. Its provisions are set forth in a detailed statutory framework. The uninsured motorist statutes define the parties, terms and conditions of an uninsured motorist contract. We have developed a large body of case law to further explain and define its terms and features. No policies, however, are ever issued. The benefits any injured worker is entitled to receive are specified by statute. Whether included in the policy language or not, the terms of our uninsured motorist statute are part of the insurance contract of any insured who is injured in this state. Likewise, as with workers' compensation, "[a]ny attempt to contractually limit an insurer's duty of coverage is necessarily confined to the boundaries of the statute and may not be effective to narrow the requirements of that statute." State Farm Mutual Automobile Insurance Co. v. Nester, 459 So.2d 787, 789 (Miss. 1984). I write simply to point out that each time we tamper with our uninsured motorist statute, we strike the Tar Baby at our own peril. A more fair and simple approach would be to apply the laws of Mississippi whenever an accident occurs in this State. This would be consistent with our public policy of mandating that every automobile liability policy offer uninsured motorist coverage. Had the O'Rourkes had a passenger who was a Mississippi resident or a visitor from Alabama when the collision occurred, would the conflicts of law question been resolved differently? Even in Boardman, we conceded that:
there will be cases where, applying the center of gravity doctrine, we might conclude in the first instances that the law of another state should be applied. Where the law is contrary to the deeply ingrained and strongly felt public policy of this state, however, we have recognized that we may nevertheless apply and enforce this state's positive substantive law.

470 So.2d at 1031 (emphasis added). Aggregation of uninsured motorist claims is deeply ingrained in our law of uninsured motorist coverage. Tennessee law clearly is contrary to our laws and public policy. Accordingly, I disagree with the majority's conclusion that Tennessee law must apply.
SULLIVAN, J., joins this opinion.
NOTES
[1] The record does not contain a copy of the State Farm policy on the Oldsmobile. These figures were taken from the O'Rourkes complaint.
[2] The Colonial policy on the Toyota shows Daniel O'Rourke as the sole owner. Title to the Toyota is not included in the record.
[3] This Court has also adopted Section 193 of the Restatement (Second), concerning Contracts of Fire, Surety, or Casualty Insurance:

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy . ..
See Boardman at 1033.
[4] Other state courts have made similar decisions in UM cases where there is a conflict of law. In Travelers Indemnity Co. v. Stearns, 116 N.H. 285, 358 A.2d 402 (1976), a UM claim was made under an insurance policy issued in Massachusetts to a Massachusetts resident. The New Hampshire Supreme Court held that Massachusetts UM law applied, even though the accident occurred in New Hampshire and the operator of the other vehicle was a New Hampshire resident. In Lewis v. American Family Insurance Group, 555 S.W.2d 579 (Ky. 1977), a UM claim was made pursuant to an insurance policy issued in Indiana to an Indiana resident. The Kentucky Supreme Court held that Indiana law governed, notwithstanding the facts that the accident occurred in Kentucky and the uninsured motorist was a Kentucky resident. Boardman, 470 So.2d at 1034, n. 5.
[5] The O'Rourkes counter in their reply brief that stacking may occur in either of two situations: First, an insured may "stack" coverage to qualify a tortfeasor as an uninsured or underinsured motorist. Second, once a tortfeasor is qualified as an uninsured/underinsured motorist, then stacking of other available policies is allowed for the purposes of recovering damages.

(emphasis added). The O'Rourkes argue that theirs is a "stacking" case of the second variety. While the above is a correct statement of the law as it appears in Wickline v. U.S. Fidelity and Guar. Co., 530 So.2d 708 (Miss. 1988) and Thiac v. State Farm Mutual Automobile, 569 So.2d 1217 (Miss. 1990), even a determination that this case does contain "stacking" of the second kind would not result in a holding that the O'Rourkes are entitled to recover under the Colonial policy. The question would still remain as to which policies were available to stack, which remains contingent on the choice of law question that must be answered first.
[1] The Boardman decision may have been colored by the need to find that young Boardman was still a resident of his father's Nebraska household to be considered an insured under the USAA policy.