Lawrence W. SNODGRASS, Appellant,

v.

STATE FARM MUTUAL AUTOMO-BILE INSURANCE COMPA-NY, Appellee.

No. 1997–CA–002181–MR.

Court of Appeals of Kentucky.

Nov. 6, 1998.

Discretionary Review Denied by Supreme Court April 14, 1999.

Gerald L. Greene, Pineville, for appellant.

Susanne M. Cetrulo, Edgewood, for appellee.

Before COMBS, GARDNER and MILLER, JJ.

## OPINION

COMBS, Judge:

Lawrence Snodgrass appeals from a summary judgment entered by the Boone Circuit Court in favor of State Farm Mutual Automobile Insurance Company ("State Farm") in an action based on the appellant's claim for underinsured motorist benefits. Having reviewed appellant's arguments and the applicable law, we conclude that the trial court properly applied Virginia law to resolve the legal issue before it. Consequently, we affirm.

On September 23, 1991, Snodgrass, a Virginia resident, was injured in an automobile accident while traveling on Interstate 75 in Boone County, Kentucky. The driver of the automobile that struck Snodgrass's vehicle, Howard Bragg, was a Kentucky resident. Both Snodgrass and Bragg were insured by the appellee, State Farm. Following the automobile collision, Snodgrass filed a personal injury action against Bragg. Ultimately, Snodgrass agreed to release his claim against Bragg in exchange for $100,000.00, Bragg's liability limits. Snodgrass did not, however, release his claim against State Farm for underinsured motorist benefits. Instead, he sought to stack his underinsured motorist coverage for an additional $200,000.00 in benefits.

Whether Snodgrass is entitled to recover underinsured motorist benefits pursuant to his contract with State Farm is the basis of this appeal. Snodgrass and State Farm agree, as they did before the trial court, that should Kentucky law govern the interpretation of the insurance contract, Snodgrass would be entitled to recover underinsured motorist benefits. However, the parties also agree that should Virginia law control, Snodgrass would not be entitled to those benefits. The dispositive issue to be decided is whether the trial court erred by concluding that Virginia law applied to Snodgrass's claim.

State Farm contends that our opinion in *Bonnlander v. Leader Nat'l Ins. Co.,* Ky. App, 949 S.W.2d 618 (1996) (*disc. review denied,* August 27, 1997) governs this appeal. In deciding *Bonnlander,* we relied upon *Lewis v. American Family Ins. Group,* Ky., 555 S.W.2d 579 (1977). In *Lewis,* a claim was made pursuant to the underinsured motorist provisions of two automobile insurance policies. The collision occurred in Kentucky and the uninsured tortfeasor was a Kentucky resident. The plaintiffs, however, were residents of Indiana, whose vehicles were principally garaged in Indiana, and who were insured under an Indiana policy. *Id.* at 580. The non-resident plaintiffs filed the action in Kentucky, contending that Kentucky law applied. Citing the Restatement (Second) of Conflicts, the Kentucky Supreme Court held that the laws of the state with the most significant relationship to the transaction and to the parties would govern the action. *Id.* at 581–582. Noting that the insurance contracts at issue were entered into in Indiana between Indiana parties and that they governed automobiles that were licensed and garaged in Indiana, the Supreme Court concluded that Indiana law

should determine the rights and liabilities of the parties under the policies. *Id.* The Court observed that in most cases, the law of the residence of the named insured will govern the interpretation of his automobile liability insurance policy. *Id.*

Similarly, in *Bonnlander,* we concluded that the law of Indiana would be applied to adjudicate the plaintiffs' claims for underinsured motorist benefits pursuant to their respective insurance policies. In *Bonnlander,* we noted that the plaintiffs were Indiana residents; that they were employed by an Indiana company, in whose vehicle they were riding at the time of the automobile collision; and that the insurance policies were written pursuant to Indiana law. *Bonnlander* at 620. We noted that the only contacts with Kentucky were that the accident occurred here and that the tortfeasor resided here. *Id.* We summarily rejected the appellants' argument that these minimal contacts were sufficient to justify the application of Kentucky law. In addition, we rejected the appellants' contention that because the appellee insurance companies were authorized to do business in Kentucky and had filed a "Declaration of Compliance with No-fault Insurance Requirements," they were obligated to provide underinsured motorists' coverage to the appellants pursuant to Kentucky law. We held as follows:

> The declarations filed by [the insurance companies] pursuant to KRS 304.39–100(2) only require that [the companies] provide basic reparations benefits and the statutory minimum tort liability insurance on any covered vehicle while it is in the state of Kentucky. There is no requirement that they provide underinsured motorists coverage to their insureds. This is in keeping with the public policy of Kentucky's Motor Vehicle Reparations Act, which is to protect *Kentucky residents* from out-of-state vehicles which come into Kentucky and cause accidents and have inadequate or no insurance. It follows that basic reparations benefits and minimum tort liability insurance go with the vehicle, while

underinsured motorists coverage is personal to the insured.

*Bonnlander* at 620–621. (Emphasis added).

Because Snodgrass has failed to point to contacts more significant, numerous, or compelling than those identified in *Bonnlander,* and because we have rejected, as a matter of law, the argument that insurance companies doing business in this state are compelled to provide underinsured motorist benefits to non-resident insureds pursuant to Kentucky law, we conclude that the trial court did not err in its determination that the law of the Commonwealth of Virginia rather than the law of Kentucky must apply in construing the underinsured motorist provisions of the appellant's insurance policies.

We have not overlooked the public policy argument so articulately and persuasively advanced in support of the appellant's position. Citing *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981), Snodgrass urges us to adopt a relatively expansive choice-of-law rule similar to that utilized in Minnesota. In *Hague,* the United States Supreme Court considered Minnesota's decision that the better, more modern rule of law favored the application of its own state law in proceedings where the relationship of the forum state to the parties and transaction could be characterized as somewhat attenuated—at least in terms of traditional choice-of-law analysis requiring tallying up of significant contacts. In a plurality opinion, the Supreme Court agreed to sustain Minnesota's view that it had an interest in the underinsured motorists coverage of non-resident policyholders; the Court refused to rule that the Minnesota position violated the Due Process Clause or the Full Faith and Credit Clause.

After careful analysis of the current state of Kentucky law, we find that the courts of Kentucky have elected to take a more restrictive view of the Commonwealth's interest in the insurance policies of non-resident litigants, electing to apply traditional choice of law analysis and hold-

ing that the law of the state of residence of an insured shall govern in cases involving the interpretation of underinsured motorists coverage. This court is without jurisdiction to abandon the precedents established in *Lewis* and *Bonnlander;* this is a matter that must be left to the discretion of our Supreme Court.

Finally, we note that the decision of a Virginia court to dismiss State Farm's declaratory judgment action involving the same parties and based on the same issues has no bearing on our opinion. The Virginia court declined to exercise jurisdiction over this matter in part in an effort to avoid a multiplicity of litigation and duplication of costs and expenses. The precatory language included in the order of dismissal indicating that Kentucky law would apply to determine the extent of State Farm's obligation is of no mandatory force or effect.

For the foregoing reasons, the judgment of the Boone Circuit Court is affirmed.

All concur.