**Michael FLINT, Plaintiff,**

v.

**LIBERTY INSURANCE CORP., Defendant.**

Civil Action No. 5:07–439–JMH.

United States District Court,
E.D. Kentucky,
Central Division,
at Lexington.

May 1, 2009.

Elmer J. George, Joseph H. Mattingly, III, Lebanon, KY, for Plaintiff.

Robert L. Steinmetz, Tracey Clemmons Smith, Gwin Steinmetz Miller & Baird PLLC, Louisville, KY, for Defendant.

## MEMORANDUM OPINION AND ORDER

JOSEPH M. HOOD, Senior District Judge.

Plaintiff Flint filed this declaratory judgment action in order to resolve a dispute with his automobile insurance carrier, Defendant Liberty Insurance Corp., regarding whether Indiana or Kentucky law applies to his underinsured motorist insurance policy. Both parties moved for summary judgment. The matter is fully briefed, except that Flint has not filed a reply in support of his motion for summary judgment. Nevertheless, the time for filing a reply has lapsed and the motions are ripe for review. The Court will grant Liberty's motion for summary judgment, and deny Flint's motion, because the principal location of the insured risk was in Indiana.

## I. BACKGROUND

The facts in this case are largely undisputed. In 1995, Plaintiff Michael Flint ("Flint") moved to Louisville, Kentucky. [Flint Dep. at 21.] In 2000, Flint purchased a farm in Deputy, Indiana, and owned other commercial and rental properties in Indiana. [*Id.* at 6.] In 2005, Flint moved his government consulting business from Louisville to Frankfort, Kentucky.

[*Id.* at 12.] Flint split his time between his homes in Louisville and in Indiana. He renovated the Indiana home on weekends during warm months. [*Id.* at 11, 41, 47.] Flint listed the Indiana home as his residence on his 2004 and 2005 federal income tax returns. [*Id.* at 16, 18.] He also testified that he told the Indiana Farm Service Agency that he was an Indiana resident. [*Id.* at 14–15.]

Flint's relationship with Defendant Liberty Insurance Corp. ("Liberty") began in 2000. [*Id.* at 12.] Liberty insurance agent Matt Sturgeon ("Sturgeon"), working in Louisville, sold Flint an auto insurance policy to cover Flint's 1999 GMC Yukon. [Sturgeon Dep. at 13–14.] The policy was written in Kentucky because the Yukon was registered in Kentucky, garaged at Flint's Louisville home, and Flint held a Kentucky driver's license at the time. [Record No. 20, Ex. 3.]

In June 2002, Flint purchased a 2001 GMC Sierra truck from his friend, an Indiana auto dealer. [Flint Dep. at 44–45.] Flint permitted his friend to register the vehicle in Indiana. [*Id.* at 45.] Flint testified that he knew Indiana insurance rates for the Sierra were less than Kentucky rates, although he did not remember specific rates. [*Id.* at 47.] He was informed that he needed to register the vehicle in Indiana to receive the Indiana insurance rates. [Sturgeon Dep. at 24–25.] Flint stated that he purchased the vehicle for use on his Indiana farm. [Flint Dep. at 47.] The truck was titled and registered in Indiana and Flint purchased insurance for the vehicle from Liberty, through Sturgeon. [Sturgeon Dep. at 25.] The policy was written in Indiana because the Sierra was registered in Indiana, Flint held an Indiana driver's license, and Flint requested an Indiana policy, in part, to save money. [*Id.* at 25–26; Flint Dep. at 46–47; Record No. 20, Ex. 2.]

In April 2005, Flint traded the Sierra for a 2004 Cadillac CTS, a sedan. [Flint Dep. at 10.] The Cadillac was purchased and registered in Indiana by the same friend that purchased the Sierra. [*Id.* at 9–10.] On May 10, 2005, Flint substituted the Cadillac for the Sierra on his auto policy with Liberty. [Record No. 20, Ex. 2.] He listed his residence as Deputy, Indiana, on his "Request for Auto Policy Change" form. [Record No. 20, Ex. 6.] Under the terms of the policy, Flint's insurance included underinsured motorist ("UIM") coverage up to a maximum of $250,000 per person. [Record No. 20, Ex. 4.] Flint's UIM endorsement, written in Indiana, states, in part:

LIMIT OF LIABILITY

A. The limit of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident....

. . . .

B. The limit of liability shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible....

. . . .

D. [Liberty] will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

[Record No. 20, Ex. 2.]

On August 5, 2005, Flint was injured in a two-vehicle collision in Danville, Kentucky. At the time of the accident, Flint was driving his Cadillac. The other driver paid Flint the policy limits of his coverage, $100,000. Flint filed a claim with Liberty for coverage under his UIM policy, up to a maximum of $250,000. On December 3, 2007, after Liberty denied the claim, Flint filed a complaint in Boyle Circuit Court, the county where the tort occurred, for a declaration of rights under the Liberty insurance policy. Liberty removed the action to this Court pursuant to 28 U.S.C. §§ 1332 and 1441. The parties disagree about the maximum limit of insurance available under the UIM policy.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. ANALYSIS

■ In this case, there is no genuine issue of material fact. The maximum limit of insurance available depends upon whether the interpretation of Flint's insurance policy with Liberty is controlled by Kentucky law or Indiana law. The parties agree that if Indiana law applies, the maximum amount of UIM coverage available to Flint is $150,000, or $250,000 minus $100,000 received from the tortfeasor's liability insurance. *See* Ind.Code § 27–7–5–5(c). The parties also agree that should Kentucky law apply, the maximum amount of UIM coverage available is the full policy limit of $250,000. *See* Ky.Rev.Stat. Ann. § 304.39–320(5) ("Nothing in this section, including any payment or credit under this subsection, reduces or affects the total amount of underinsured motorist coverage available to the injured party.") The sole issue in the parties' cross-motions for sum-

mary judgment is the legal question of which state's law applies.

■ Liberty is entitled to judgment as a matter of law because Indiana law applies to Flint's UIM policy with Liberty. The Court must employ Kentucky's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Andersons, Inc. v. Consol, Inc.,* 348 F.3d 496, 501 (6th Cir. 2003). Kentucky follows the Second Restatement's "most significant relationship" approach to resolving conflicts of law where an insurance contract is at issue. *Lewis v. Am. Family Ins. Group,* 555 S.W.2d 579, 581–82 (Ky.1977). In Kentucky, the rights created by a casualty insurance contract are determined by the "local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy...." *Id.* at 582. Here, Flint and Liberty understood Indiana to be the principal location of the insured risk. Sturgeon knew Flint owned homes and worked in both Kentucky and Indiana, but Flint represented to Liberty that the principal location would be in Indiana. The representations included garaging and licensing the Sierra in Indiana, holding an Indiana driver's license, and stating he planned to use the truck on the Indiana farm. Flint wanted to save money on insurance premiums by having an Indiana policy. Flint continued to represent the principal location of the risk to be in Indiana when he substituted the Cadillac for the Sierra. He registered the Cadillac in Indiana, had roughly three months to change the policy but failed to do so, and listed his residence as Deputy, Indiana, on his "Request for Auto Policy Change" form. Flint knew that Liberty could write the policy in Kentucky from his earlier insurance contract on the Yukon. Flint knew that registering the vehicle in Indiana and owning a home in that state would allow Liberty to write the policy in Indiana. The parties understood the principal location of the risk was in Indiana because Flint effectively chose Indiana as the principal location.

Flint's state of residence alone does not resolve the issue. The Kentucky Supreme Court noted that in most cases the residence of the insured will be determinative. *Id.* Residence may be determinative in most cases because automobile owners typically garage their vehicles where they reside. Restatement (Second) of Conflict of Laws § 193 cmt. b (1971). In this case, Flint represented to Liberty that the Cadillac would be garaged in Indiana regardless of his residence. Flint knew that a policy written in Indiana would be less expensive than one written in Kentucky. He also knew that in order to have the policy written in Indiana, the vehicle would need to be registered in Indiana. When Flint registered the Sierra and Cadillac in Indiana and purchased an Indiana policy, he separated the principal location of the risk from his residence in Kentucky. In essence, Flint received the benefit of his bargain with Liberty, establishing the location of the risk in order to pay lower premiums, and cannot avoid the burden of that bargain.

■ Kentucky does not have a more significant relationship to the insurance contract than Indiana. The principal location of the insured risk determines which state's law applies, "unless ... some other state has a more significant relationship ... to the transaction and the parties...." *Lewis,* 555 S.W.2d at 582. The location of the tort is not important in the analysis of which state's law determines the validity of or rights under a contract. *Bonnlander v. Leader Nat'l Ins. Co.,* 949 S.W.2d 618, 620 (Ky.Ct.App.1996); *see* Restatement (Second) of Conflict of Laws § 188 (1971) (listing contacts to be taken into account for contracts). Kentucky's relationship to the insurance contract includes being the place

of contracting and negotiating. Also, although it is unclear where Flint was domiciled, he may have been domiciled in Kentucky at the time of the accident. In contrast, Indiana was the primary location of the subject matter of the contract, by agreement of the parties, the location of one of Flint's residences, and a market for Liberty's products. The Kentucky contacts, however, were not more significant than Indiana's because the most significant contact, where the parties understood the principal location of the insured risk to be, was with Indiana and this contact was not outweighed by the remaining contacts. Moreover, Flint and Liberty bargained for the insured risk to be centered in Indiana and understood Indiana to be the principal location of the insured risk, choosing to value the Indiana contacts over all others.

## IV. CONCLUSION

Under Kentucky's choice of law rules, Indiana law applies to the parties' dispute over the maximum amount of UIM benefits available to Plaintiff. The parties established and understood that the principal location of the insured risk would be in Indiana. Accordingly, **IT IS ORDERED:**

(1) that Defendant's Motion for Summary Judgment [Record No. 20] be, and the same hereby is, **GRANTED,** and

(2) that Plaintiff's Motion for Summary Judgment [Record No 21] be, and the same hereby is, **DENIED.**