STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,

v.

TENNESSEE FARMERS MUTUAL INSURANCE COMPANY, Appellee.

No. 89-CA-508-MR.

Court of Appeals of Kentucky.

March 2, 1990.

Discretionary Review Denied by Supreme Court April 18, 1990.

---

Mark S. Medlin, Thomas B. Russell, Whittow, Roberts, Houston & Russell, Paducah, for appellant.

James B. Brien, Jr., Neely & Brien, Mayfield, for appellee.

Before CLAYTON, LESTER and McDONALD, JJ.

LESTER, Judge.

This is an appeal from a summary judgment awarding appellant damages against appellee's insured but denying it relief against appellee upon a subrogation claim.

Tennessee Farmers Mutual Insurance Company is an out-of-state (Tennessee) carrier which is not registered to do business in the Commonwealth. It had issued a motor vehicle policy in Tennessee for a car garaged and licensed in that state to its owner, Hoyt Rapier, a Tennessee resident. Pertinent provisions of that policy were:

Limits of Liability

The limit of liability shown in the declaration for "each person" for bodily injury liability is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident.

This is the most we pay regardless of the number of covered persons, claims made, vehicles or premiums shown in the declaration, or vehicles involved in the auto accident.

Financial Responsibility Required

If we certify this policy as proof of financial responsibility for the future, under any financial responsibility law, this policy shall comply with the provisions of the law to the extent of coverage required, but not in excess of the limits stated in the declaration.

In November of 1985, Margaret Rapier, a Tennessee resident, was operating the automobile in question in Calloway County when it collided with a car operated by Christine Rodgers which was insured by State Farm Mutual Automobile Insurance Company. By way of an agreed judgment Rodgers was awarded $25,000 against the Rapiers of which Tennessee Farmers paid its policy limits of $15,000. State Farm paid its insured the balance of $10,000 under its underinsured motorist benefits and took an assignment of the judgment. Thereupon State Farm sought judgment against the Rapiers and their carrier for the benefits it had paid which the court granted as to the insureds, but denied as to Tennessee Farmers.

It is appellant's position that the Kentucky Motor Vehicle Reparations Act not only applies to nonresident operators driving in this state but also to their insurance carrier regardless of whether that company is registered to do business in this jurisdiction or not. In part, State Farm is correct in that nonresident operators are subject to our no-fault act, KRS 304.39–060, KRS 304.39–080(5), *Ashby v. Money*, Ky., 717 S.W.2d 223 (1926), but its reliance upon *Dairyland Ins. Co. v. Assigned Claim*

*Plan,* Ky., 666 S.W.2d 746 (1984), is misplaced for that opinion states at p. 748:

> Dairyland has filed the required form under this statute [KRS 304.39–100(2) ], being authorized to do business in this state.

Thereafter, on the same page the *Dairyland* court wrote:

> Although perhaps unskillfully drawn it is our opinion that the statute—KRS 304.-39–100(2)—requires coverage *by an insurer authorized to transact business in this Commonwealth, . . . .* (emphasis added)

In this posture *Dairyland* applies only to those nonresident carriers registered to do business in this state which is unlike the appellee herein.

Appellant urges that the public policy of the Commonwealth should require that nonresident, nonregistered insurers be required to automatically comply with our no-fault act citing Schermer, *Automobile Liability Insurance,* § 12.03[1] (2nd ed. 1989). The quotation to which our attention is directed is prefaced by:

> A number of states solve any possible dilemma posed for nonresident motorists by requiring insurers, *as a condition to writing insurance in the regulatory state,* to agree that complying coverage will be deemed to attach to liability policies covering nonresident vehicles when used or operated in the state.

> The New York act applies not only to those *insurers authorized to "transact" business in the state, but also to those "controlling or controlled by or under common control by or with such insurers."* Whether the "control" contemplated by the act and the relevant regulations is working control, majority share control, or a securities exchange regulation type of control is not clear.

> The constitutional property (sic) of the imposition of such a condition has been the subject of diverse extra-judicial views. It has been asserted that such a

regulation of the insurer's foreign activities offends Commerce, Due Process, and Impairment of Contract clauses. This position is particularly sound where the regulatory state has a no-fault act, which provides assigned claim benefits to residents injured by the operation of an unsecured foreign vehicle. (emphasis added)

Thus, we note that if we were to sustain appellant's argument there would have to have been some compliance by appellee with KRS 304.39–100(2) authorizing it to do business in this state, and absent such compliance *Dairyland* has no application.

Appellant also urges that Tennessee Farmers should have realized that its insureds might venture into other states such as Kentucky as being reasonably foreseeable. This contention is not illogical but what it overlooks is that the General Assembly has no power to dictate to a nonresident driver and his nonresident nonregistered insurance carrier what must be in their contract. In this respect, we agree with the Tennessee Court of Appeals in *Trans–World Assurance Co. v. McNabb,* No. 83–210–II, Court of Appeals of Tennessee, Middle Section (Dec. 22, 1983),[1] a case involving a Georgia statute (Ga.Code Ann. § 56–3405b(a)(2) (1982) Supp.) similar to KRS 304.39–100(2) wherein the court had to determine whether the plaintiff-insurer, which issued in Tennessee a policy to a Tennessee resident without any provision for no-fault coverage, must have extended such benefits to a claimant injured in an accident occurring in Georgia *where the insurer is licensed in both states.*

The Tennessee Court first addressed the doctrine of lex loci contractus and concluded that pursuant to that principle, as enunciated in *Restatement (Second) of Conflict of Laws,* § 188 (1971), Tennessee substantive law would apply as opposed to that of Georgia. This issue is raised in the case at bench and our result would be the same as that of the Trans–World Court. *See Lewis v. American Family Ins. Group,* Ky., 555

---

**1.** This case is erroneously cited as an opinion found at 656 S.W.2d 913 (Tenn.1984) in Schermer, *Automobile Liability Insurance* § 12.03(1) at p. 12–16 which is an earlier appeal to the Ten-

nessee Supreme Court in the same litigation and is properly located at 646 S.W.2d 913 (1983). The subsequent Court of Appeals opinion is unreported.

S.W.2d 579 (1977) and *Breeding v. Massachusetts Indemnity & Life Ins. Co.*, Ky., 633 S.W.2d 717 (1982). The court then discussed the power of one state's legislature to pass a statute amending a contract entered into in another jurisdiction. In determining that this could not be done, Judge Conner, writing for the Trans–World Court, made some very logical observations to the effect:

We agree that Georgia may impose conditions on companies licensed in that state [unlike appellant herein]. And, no doubt, various sanctions are available when a company fails to meet those requirements, i.e., revocation of license, etc. However, we do not believe that Georgia can enforce its licensing provisions by attempting to "amend" contracts in other states. Such a practice is neither logical nor equitable; and in the instant case it is not practicable from a conflicts-of-law viewpoint.

If defendant's "amended contract" argument were accepted, numerous problems would be created. As an example, the result in this case would be entirely different if only one fact, the licensing of the plaintiff in Georgia, were changed. Is the law such that residents of the other 49 states will have to determine if the insurance company from which they propose to buy is licensed in Georgia to insure uniformity in application of an otherwise standard liability policy if an accident occurs there? Or, from the perspective of insurers, in order to attempt to avoid "statutorily amended" contracts from other states, will subsidiary or affiliate companies have to be formed to be licensed only in Georgia in lieu of the parent? We think that the only reasonable answers to these questions are in the negative.

\* \* \* \* \* \*

It seems appropriate to emphasize an important matter of public interest illustrated by the present dispute.

A patchwork of statutory systems for saving insurance premiums or insurance companies have evolved whereby a motorist may no longer safely travel from one state to another relying for protection upon the traditional common law system of compensation from wrongdoers for injury inflicted by them. Apparently, one desiring to cross a state line in an automobile should obtain competent legal advice as to the perils of doing so and should attempt to procure insurance protection for the perils to be encountered under the laws of each state which he intends to enter.

If this situation is as unreasonable as it appears to be, then those who have assumed the duty of protecting an unsuspecting public in insurance matters should make it their business to require that adequate protection against the perils of interstate travel be included in all automobile policies or at least offered to all policyholders.

It appears that some policies issued in Tennessee contain some ambiguous language which might possibly be stretched to include the situation under discussion. However, the motoring public is entitled to unambiguous protection, and the courts should not be faced with the burden of trying to piece together justice from an ambiguous contract the provisions of which are under governmental control.

It is probably feasible to alter uninsured motorist policy provisions to extend protection to accidents in "no fault states." Other solutions will probably occur to those with expertise in the field of automobile insurance.

In any event, the public should be fully informed of the situation so that a proper remedy may be demanded and devised.

We agree with our Tennessee brethren.

Appellee never having qualified to transact business in this jurisdiction, the judgment is affirmed.

All concur.