Rachel Sue HAMMER, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

Civil Action No. 3:96CV–198–S.

United States District Court, W.D. Kentucky.

Oct. 11, 1996.

---

11. Docket Entry Nos. 384 and 385 in *Delgado*.

12. Docket Entry No. 372 in *Delgado*.

13. Docket Entry No. 392 in *Delgado*.

Michael R. Hance, Franklin & Hance, Louisville, KY, for Plaintiff.

Valerie W. Herbert, Ricketts & Travis, Louisville, KY, Van T. Willis, Kightlinger & Gray, New Albany, IN, for Defendant.

## MEMORANDUM OPINION AND ORDER

SIMPSON, Chief Judge.

This matter is before the court on a "motion for declaratory judgment" by State Farm Mutual Automobile Insurance Co. ("State Farm"). In view of our summary disposition, we will apply the standard in Fed.R.Civ.P. 56 for summary judgment. Rachel Sue Hammer sued State Farm to collect underinsured motorist benefits under two automobile insurance contracts. State Farm argues that: (1) Indiana law applies to this insurance dispute, (2) that the anti-stacking provision in the insurance contracts is valid, and (3) that the setoff provision in the contracts requires summary disposition in State Farm's favor. We find that State Farm is correct on each of its three contentions as a matter of law and will dismiss the complaint with prejudice.

### FACTS

On November 16, 1994, Rachel Sue Hammer was severely injured in an automobile collision with Barbara M. Simms. Simms—who was at fault—was insured by Kentucky Farm Bureau for $25,000, which was paid to Hammer. Simms was another defendant in this action, but has settled with Hammer and been dismissed. At the time of the accident, Hammer was an insurance adjuster for State Farm, and was driving a company-owned car. The company car was insured by a State Farm insurance policy with underinsured motorist coverage. State Farm paid Hammer the $100,000 maximum underinsured policy benefit under the company car's policy. The present lawsuit involves Hammer's own personal automobile insurance policies with State Farm.[1] Hammer claims benefits under these two policies' underinsured motorist provisions.

Hammer has, at all relevant times, been a resident of Indiana; the policies were purchased in Indiana; the premiums were paid in Indiana; and her insured vehicles were garaged in Indiana. The accident, however, occurred in Kentucky and the State Farm company car driven by Hammer was registered in Kentucky.

---

1. The record includes two insurance policies issued to Hammer: 556–7917–F29–14C and 556–6816–F29–14C. For all intents and purposes, these policies are identical. In her response, Hammer mentions a third policy, 582–0546–D21–14C. There is no mention of this policy anywhere else in the record. In her Amended Complaint of February 14, 1996, Hammer makes claims under the "6816" and "7919" policies only. Hammer has failed to introduce any evidence suggesting the existence of this third policy.

**194**

## DISCUSSION

### 1. Choice of Law

■ Much of this case turns on which state's law applies to this insurance dispute. Hammer urges that we acknowledge the Kentucky "contacts" to find that Kentucky law applies. State Farm argues that Indiana law should apply, pointing to the pervasive Indiana "contacts."

Sitting in diversity, we are required to apply the choice of law rules of the forum state, Kentucky. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In *Lewis v. American Family Ins. Group,* 555 S.W.2d 579 (Ky. 1977), Indiana residents were injured in an accident in Kentucky involving uninsured motorists. Choice of law was, as here, a threshold question. The Kentucky Supreme Court adopted the method for deciding choice of law in Section 188 of the RESTATE-MENT (SECOND) OF CONFLICTS OF LAW (1971) (a "contacts" analysis). The court wrote:

> Using this test, in most cases the law of the residence of the named insured will determine the scope of his automobile liability insurance policy.... Because the insurance contracts in this case were entered into in Indiana between Indiana parties and concerned automobiles which were licensed and garages in Indiana, we are of the opinion that Indiana law should govern the rights and liabilities of the parties under these contracts.

*Lewis,* 555 S.W.2d at 582. Thus, binding precedent from the Kentucky Supreme Court reveals that Indiana law should apply to this case. *See also State Farm Mut. Auto. Ins. Co. v. Tenn. Farmers Mut. Ins. Co.,* 785 S.W.2d 520, 522 (Ky.App.1990) (approving a Tennessee decision which applied Tennessee law to an automobile insurance dispute where the accident occurred in Georgia but the insurance policy was issued in Tennessee to a Tennessee resident); *Owens v. DeClark,* No. 94–265, 1995 WL 912492 (E.D.Ky. Dec. 7, 1995) (Memorandum Op. and Order by Coffman, J.) (case involving underinsured motorist protections of an insurance policy sold by State Farm in Indiana to Indiana residents would be decided according to Indiana law, even though accident occurred in Kentucky).

Indiana law is in accord. In *State Farm Mut. Auto. Ins. Co. v. Conway,* 779 F.Supp. 963 (S.D.Ind.1991), an Indiana resident was injured in an automobile accident in Kentucky. The liability policy was issued in Indiana. In applying the "contacts" approach, the court wrote:

> Indiana clearly has the most intimate contacts to the facts in this case. The insurance contracts at issue in this case were entered into in Indiana (the applications were completed in New Albany, Indiana and the premiums were paid in the State as well). The actual policies were issued in Indiana and were mailed to the defendant's Indiana residence.... The only contact occurring out of the State of Indiana was the place of the accident....

*Id.* at 967.

It is clear that the Indiana "contacts" predominate in this case. Therefore, the rights and obligations of the parties must be resolved under Indiana law.

### 2. Stacking Policies

■ Stacking occurs when a policy-holder suffers a single collectible loss, but claims benefits under multiple insurance policies. In this case, Hammer argues that she should be allowed to stack her personal policies; i.e., the two policies' $50,000 per person underinsured motorist coverage should be aggregated to a $100,000 limit.

Hammer's two insurance policies contain an anti-stacking provision on page 15:

**If There Is Other Coverage—Coverage W**

    \*    \*    \*    \*    \*    \*

3. If the insured sustains bodily injury while occupying a vehicle not owned by you, your spouse or any relative, and:

  a. such vehicle is described on the declarations page of another policy providing underinsured motor vehicle coverage, ...

this coverage applies:

  a. as excess to any underinsured motor vehicle coverage which applies to the vehicle or driver, but

b. only in the amount by which it exceeds the primary coverage.

*If coverage under more than one policy applies as excess:*

a. *the total limit of liability shall not exceed the difference between the limit of liability of the coverage that applies as primary and the highest limit of liability of any one of the coverages that apply as excess;* . . .

(emphasis added). Therefore, the policies expressly prohibit stacking to reach a higher aggregate total than each policy's individual limit.

Indiana law specifically allows insurance contracts to contain an anti-stacking provision. Section 27–7–5–5(a) of the Indiana Code provides:

(a) The policy or endorsement affording coverage specified in this chapter may provide that the total limit of all insurers' liability arising out of any one (1) accident shall not exceed the highest limits under any one (1) policy applicable to the loss, but in no event may coverage be less than the minimum set forth in IC 9–25–4–5.

Indiana courts have upheld this provision. *See, e.g., High v. United Farm Bureau Mut. Ins. Co.,* 533 N.E.2d 1275 (Ind.Ct.App.1989); *American Economy Ins. Co. v. Motorists Mutual Ins. Co.,* 605 N.E.2d 162 (Ind.1992).

Thus, Hammer's personal policies with State Farm unambiguously limit underinsured motorist coverage to the highest limit of liability in any one of Hammer's policies, not the stacked aggregate of them all. Indiana law permits this limitation. Therefore, $50,000 is the maximum of underinsured motorist coverage Hammer may receive under her personal policies.

### 3. Setoff

█ State Farm's final contention is that it should be allowed to setoff, against the underinsured motorist coverage to which Hammer may be entitled, amounts paid by other sources to Hammer already. Specifically, State Farm points to two amounts that it argues should be setoff against the $50,000 maximum, (*see supra*): 1) the $25,000 payment received by Hammer from the Simms' insurance company, and 2) the $100,000 payment received by Hammer from State Farm pursuant to the insurance policy on the company-owned car which Hammer was driving at the time of the accident. Deducting these amounts from $50,000, State Farms argues that Hammer is therefore not entitled to *any* underinsured motorist benefits under her personal policies.

As to the $25,000 payment from Simms, the relevant contract language is found on page 13 of Hammer's personal policies:

### Limits of Liability—Coverage W

\*    \*    \*    \*    \*    \*

4. The most we pay any one insured is the lesser of:

   a. the difference between the "each person" limit of this coverage and the amount paid to the insured by or for any person or organization who is or may be held legally liable for the bodily injury; or

   b. the difference between the amount of the insured's damages for bodily injury and the amount paid to the insured by or for any person or organization who is or may be held legally liable for the bodily injury.

Therefore, Hammer is limited by contract in her collection of underinsured motorist benefits to $50,000 (her "each person" policy limit) minus the amount paid to her "by or for any person or organization who is or may be held legally liable for the bodily injury." A nearly identical provision is found in the Indiana code:

(c) The maximum amount payable for bodily injury under uninsured or underinsured motorist coverage is the lesser of: (1) the difference between: (A) the amount paid in damages to the insured by or for any person or organization who may be liable for the insured's bodily injury; and (B) the per person limit of uninsured or underinsured motorist coverage provided in the insured's policy; or (2) the difference between: (A) the total amount of damages incurred by the insured; and (B) the amount paid by or for any person or orga-

nization liable for the insured's bodily injury.

Ind.Code § 27–7–5–5(c). This statute limits underinsured motorist coverage by the same formula as the insurance policies at issue.

The plain language of § 27–7–5–5(c) and ¶ 4a of the Limits of Liability requires that the $25,000 received from Barbara Simms' insurance company be set off against the $50,000 maximum amount for which State Farm might be liable under Hammer's personal policies.

 As for the $100,000 payment from State Farm, Hammer's own underinsured motorist coverage is limited by the section titled "If There Is Other Coverage." (*See* p. 15 of the policies). Paragraph 3 prohibits the stacking of policies, but also requires that any amount paid by State Farm under the company-car policy be set off against the $50,000 policy limit. Paragraph 3 states:

3. If the insured sustains bodily injury while occupying a vehicle not owned by you, your spouse or any relative, and:

   a. such vehicle is described on the declarations page of another policy providing underinsured motor vehicle coverage, ...

this coverage applies:

   *a. as excess to any underinsured motor vehicle coverage which applies to the vehicle or driver, but*

   *b. only in the amount by which it exceeds the primary coverage.*

Such "other insurance" clauses are valid and enforceable under Indiana law. *See Pafco General Ins. Co. v. Providence Washington Ins. Co.,* 587 N.E.2d 728, 729 n. 2 (Ind.Ct. App.1992) (" 'Other insurance' clauses limit coverage when coverage under another policy is concurrently available so as to preclude stacking or double recovery of uninsured motorists coverages.").

In this case, the "primary coverage" was the $100,000 payment made to Hammer under the company car's underinsured motorist policy. Because the personal policy provides only excess coverage "in the amount by which it exceeds the primary coverage" (¶ 3b), it is clear that there is no additional coverage: the $100,000 payment swallows the $50,000 "excess" limitation. There is simply no underinsured motorist protection available for Hammer under her personal policies.

### CONCLUSION

Because Indiana law applies to this case, Hammer may not stack her individual policies. Instead, the maximum underinsured motorist benefits she may receive under her policies is $50,000. In turn, this $50,000 limit is reduced to zero by the payments from Simms and the insurer of the company-owned car in which she was driving when the injury occurred. This conclusion is mandated by the plain language of the insurance agreements between Hammer and State Farm, and the law of Indiana. Hammer is not entitled to any benefits under her personal automobile insurance policies.