**Karen SALEBA, CT,**

and

**The Good Samaritan Hospital of Cincinnati, Ohio, Inc.,
Appellants,**

v.

**Honorable James R. SCHRAND, Judge, Boone Circuit Court**

and

**Barbara Yvette Fiser, as Executrix of the Estate of Norma Luann Soard and Joseph Soard; Individually and as Next Friend and Guardian of Amber Hatter, Amanda Hatter, and Austin Hammonds, Appellees.**

No. 2009–SC–000096–MR.

Supreme Court of Kentucky.

Nov. 25, 2009.

Thomas M. Evans, Arthur Edmund Phelps, Jr., Vaseem S Y Hadi, Rendigs, Fry, Kiely & Dennis, LLP, Cincinnati, OH, Counsel for Appellants.

James Roger Schrand, II, Burlington, KY, Appellee, pro se.

Paul A. Fiser, Sweeney & Fiser, PLLC, Crescent Springs, KY, Counsel for Appellees.

Scott M. Powers, Lange, Quill & Powers, PLC, Newport, KY, Counsel for Amicus Curiae The St. Luke Hospitals, Inc.

Opinion of the Court by Justice ABRAMSON.

Karen Saleba and The Good Samaritan Hospital of Cincinnati, Ohio (hereinafter Saleba), petitioned the Kentucky Court of Appeals for a writ prohibiting Judge James Schrand of the Boone Circuit Court from requiring them to disclose various peer review documents relating to Saleba's interpretation of certain pap smear specimens and Saleba's proficiency as a cytotechnologist. The Court of Appeals denied the writ, finding that Saleba had failed to demonstrate that the trial court was acting outside of its jurisdiction or about to act erroneously. Arguing primarily that the trial court erred in applying Kentucky law as opposed to Ohio law to determine whether the peer review documents were privileged, Saleba now appeals to this Court as a matter of right. Kentucky Const. § 110(2)(a); CR 76.36(7)(a). Because the trial court did not act erroneously in applying Kentucky law or in ordering the Good Samaritan Hospital to produce the relevant peer review documents, the Court of Appeals properly denied Saleba's petition for a writ. Therefore, the Court of Appeals decision is affirmed and Saleba's request for a writ is denied.

## RELEVANT FACTS

In this medical malpractice case, Barbara Yvette Fiser, as the Executrix of the Estate of Norma Luann Soard, filed suit against several treating physicians, technologists, hospitals, and healthcare organizations on February 21, 2006, claiming that the defendants collectively failed to properly diagnose and treat Soard for cervical cancer, resulting in her untimely death. The particular facts underlying this appeal involve the interpretation of Soard's pap smear, which, Fiser contended, would have revealed Soard's cervical cancer if it had been read properly. On June 8, 2000, Dr. Hooshang Silanee, an obstetrician-gynecologist licensed to practice medicine in Kentucky, performed a pap smear on Soard in his Kentucky office. After Dr. Silanee couriered Soard's pap smear specimens to Kilborne Medical Laboratories, Inc., located in Covington, Kentucky, Kilborne then sent the specimens to the Good Samaritan Hospital in Cincinnati, Ohio. On or about June 20, 2000, Karen Saleba, a cytotechnologist employed by Good Samaritan, interpreted Soard's specimens as negative for cervical cancer. Five years later, Soard was diagnosed with cervical cancer

and died soon thereafter. As one basis for this medical malpractice action, Fiser claims that Saleba misinterpreted Soard's June 8, 2000 pap smear specimens.

On January 9, 2008, Fiser served Saleba with a formal discovery request. Saleba objected to four of the requests, Numbers 1, 2, 3, and 17. These requests read as follows:

1. Please produce copies of any and all documents concerning or related to any and all slides which were misinterpreted by Karen Saleba. (See Deposition of Karen P. Saleba, CT, at page 23).

2. Please produce copies of any and all documents regarding Quality Assurance Reviews of Karen Saleba (*Id.* at page 25)

3. Please produce copies of any and all documents regarding Ms. Saleba's monthly proficiency tests (MIME) and the results for tests administered by DHL, CAP, ASC, and/or any other entity, during her employment with Good Samaritan/TriHealth (*Id.* at page 34–35).

\* \* \* \* \* \*

17. Please produce a copy of the incident report(s) related to Ms. Saleba's interpretation of Norma Luann Soard's pap smear of June 2000, possibly by Dr. Farnum (*Id.* at page 175).

Saleba contended that these documents were protected by Ohio's Peer Review Statute, R.C. § 2305.252, which states that peer review documents "shall not be subject to discovery or introduction in evidence in any civil action against a health care entity or health care provider.…" Fiser disagreed that Ohio law applied, and on March 3, 2008, filed a motion to compel Saleba to produce the requested docu-

ments. Saleba opposed this motion to compel and requested a protective order from the trial court.

On April 22, 2008, the trial court held a hearing on these motions. On May 22, 2008, the trial court entered its order holding that Kentucky law, not Ohio law, applied to this case. The trial court concluded that Kentucky's Peer Review Statute, KRS 311.377, permits the discovery of peer review documents in medical malpractice suits and that Saleba was required to comply with Fiser's discovery requests. Specifically, the trial court ordered Saleba to produce a

(1) copy of documents concerning or related to slides misinterpreted by Saleba;

(2) copy of documents regarding Quality Assurance Reviews of Saleba;

(3) copy of documents regarding Saleba's monthly proficiency tests (MIME) and the results for tests administered by DHL, CAP, ASCP and/or any other entity during her employment with Good Samaritan Hospital/TriHealth;

(4) copy of items in Saleba's personnel file from TriHealth and Good Samaritan Hospital regarding her interpretations of pap smear specimens for the diagnosis and/or treatment of patients with cervical dysplasia and/or cervical cancer; and

(5) copy of the incident report(s) related to Saleba's interpretation of Norma Soard's pap smear of June 2000, if such report exists.

The court's order provided for the redaction of "any personal information in the produced material, including but not limited to name, address, date of birth, social security number or other information which could be used to identity individuals.…" The trial court also ordered that

all of Saleba's peer review records would be kept confidential.

Following the entry of this order, Saleba sought a writ of prohibition from the Kentucky Court of Appeals in order to prevent the production of these documents. On December 29, 2008, the Court of Appeals denied this writ, finding that Saleba had failed to show that the trial court was acting outside its jurisdiction or about to act erroneously. On appeal to this Court, Saleba argues that the trial court acted erroneously by applying Kentucky law to this medical malpractice case; that Ohio law, which prohibits the discovery of peer review documents, should have been applied; and that even if the trial court correctly applied Kentucky law, this Court should overrule *Sisters of Charity Health Systems, Inc. v. Raikes*, 984 S.W.2d 464 (Ky.1998), which holds that Kentucky's peer review privilege does not extend to medical malpractice suits. Agreeing with the Court of Appeals that the trial court correctly applied Kentucky law and properly ordered Saleba to produce the peer review documents, we affirm.

### ANALYSIS

 Whether to grant or deny a writ of prohibition is within the sound discretion of the court with which the petition is filed. *Haight v. Williamson*, 833 S.W.2d 821, 823 (Ky.1992). Thus, an appellate court ultimately reviews that decision for an abuse of discretion. *Newell Enterprises, Inc. v. Bowling*, 158 S.W.3d 750, 754 (Ky.2005). In *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky.2004), this Court explained that

[a] writ of prohibition *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower

court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

Saleba argues that her case falls into the second class of writs, contending that the trial court acted erroneously by applying Ohio law, that she has no adequate remedy by appeal, and that she will suffer an irreparable injury without a writ. Although Saleba is correct that "there will rarely be an adequate remedy on appeal if the alleged error is an order that allows discovery," *Sowders v. Lewis*, 241 S.W.3d 319, 323 (Ky.2007), she has nonetheless failed to prove that the trial court acted erroneously by applying Kentucky law.

### I. Kentucky Law Applies to Determine the Admissibility of the Allegedly Privileged Communications.

 In ordering Saleba to comply with Fiser's discovery requests, the trial court in this instance held that because "there are significant contacts to warrant the application of Kentucky law and because Kentucky has made the policy decision that such [peer review] records should be discoverable" in medical malpractice cases, Kentucky law, and not Ohio law, should apply. On appeal to this Court, Saleba argues that the trial court erred because in Kentucky, the appropriate conflict of laws test is not whether there are any sufficient contacts with the forum state, but rather, which state has the most significant contacts with the communication, an approach Saleba represents is set forth in the *Restatement (Second) of Conflict of Laws* (1971). Although Riser argues that Kentucky has only applied the *Restatement* approach in contract disputes, Saleba contends that Kentucky has never limited the "most significant relationship" test articulated in the *Restatement* to contract dis-

putes and that it should be applicable to decide the conflict of laws issue in this case.

First and foremost, Kentucky has consistently applied § 188 of the *Restatement (Second) of Conflict of Laws* to resolve choice of law issues that arise in *contract* disputes. Section 188(1) of the *Restatement,* which is found in Chapter Eight, entitled "Contracts," and in Topic One, entitled "Validity of Contracts and Rights Created Thereby," states in its entirety: "The rights and duties of the parties with respect to an issue **in contract** are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." *Restatement (Second) Conflict of Laws* § 188(1) (1971) (emphasis added). Kentucky has ample case law explaining that the "any significant contacts" test applies to tort actions, whereas the *Restatement's* "most significant contacts" test applies to contract disputes. *Foster v. Leggett,* 484 S.W.2d 827, 829 (Ky.1972) (holding that in tort cases, "significant contacts—not necessarily the most significant contacts" permit the application of Kentucky law); *Breeding v. Massachusetts Indemnity and Life Ins. Co.,* 633 S.W.2d 717, 719 (Ky.1982) (holding that in disputes involving the "validity of a contract ... [t]he modern test is which state has the most significant relationship to the transaction and the parties"); *Bonnlander v. Leader Nat. Ins. Co.,* 949 S.W.2d 618, 620 (Ky.App.1996) (explaining

that in tort actions, "any significant contact with Kentucky [i]s sufficient to allow Kentucky law to be applied," whereas in contract actions, "the law of the state with the greatest interest in the outcome of the litigation should be applied"); *Brewster v. Colgate–Palmolive Co.,* 279 S.W.3d 142, 145, n. 8 (Ky.2009) (applying Kentucky law in an asbestos exposure case because of "significant contacts" with Kentucky even though the plaintiff was exposed when he worked at the defendant's Indiana plant).

Although Kentucky case law indicates that different choice of law rules apply to tort actions versus contract disputes, these different tests are not significant here because the underlying dispute in this specific appeal is neither a tort nor a contract issue. Fiser's medical malpractice claim is most assuredly a tort action, but the more specific issue in this writ action is the discoverability of allegedly privileged communications. This Court recently engaged in a choice of law analysis involving privileged communications in *Major v. Commonwealth,* 275 S.W.3d 706, 714–715 (Ky. 2009). In *Major,* this Court applied § 139(2) from the *Restatement (Second) of Conflict of Laws* (1971)[1] to resolve the issue of admissibility of a taped phone conversation between the defendant from his home in Massachusetts and his father from his home in Nova Scotia, Canada. *Id.* at 713. The conversation would have been privileged in Massachusetts but not in Kentucky,[2] where the defendant was

---

1. Although the comment portion of § 139 was revised in 1988, the language of the section as set forth in the 1971 *Restatement (Second)* was not changed by the 1988 revision.

2. In *Major, supra,* this Court began its conflict of laws discussion with the following statement: "in multi-state matters, Kentucky traditionally follows the *Restatement (Second) of Conflict of Laws* (1988)." We cited to *State*

*Farm Mutual Auto. Ins. Co. v. Marley,* 151 S.W.3d 33, 42 (Ky.2004) for this proposition. Saleba argues that this statement in *Major, supra,* indicates that the entire *Restatement*— and thus, the most significant relationship test—has been adopted by Kentucky and is applicable in all conflict of laws cases. As explained above, however, the approach adopted by Kentucky and articulated in § 188 of the *Restatement* only applies to contract

being tried. *Id.* Although this Court ultimately held that the trial court did not err in admitting the phone call because of the law of the case doctrine, we explained that even without that doctrine, the trial court properly applied Kentucky law. *Id.* In reaching this conclusion, this Court relied on § 139(2) of the *Restatement (Second) of Conflict of Laws* (1971), which states:

> Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect.

This Court explained that even if Massachusetts had the most significant relationship with the phone conversation, there still "must be some special reason for Kentucky to forgo its acknowledged policy favoring admission" of this type of taped phone conversation. *Id.* at 714. Concluding that no special reason existed to ignore Kentucky's policy favoring admission of the disputed communication, this Court held that the trial court properly applied Kentucky law and admitted the phone conversation. *Id.* at 713–16.

Curiously, Saleba argues that this Court should apply § 139 of the *Restatement (Second) of Conflict of Laws* to the case at hand, but contends that "this approach requires weighing the significance of each state's interests." Although Saleba is correct that § 139 of the *Restatement* initially instructs courts to determine which state has the most significant relationship with a communication, the rule goes on to explain that if the communication is not privileged under the local law of the forum—in this case, Kentucky—the communication "will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect." *Restatement (Second) of Conflict of Laws* § 139(2) (1971). Applying this rule to the case at hand, we again conclude that there is no special reason to warrant ignoring Kentucky's policy of permitting peer review documents to be discoverable in medical malpractice suits.

Although Soard—a Kentucky resident who saw a Kentucky physician and who had no control over her lab results being sent by a Kentucky laboratory to an Ohio hospital—arguably has a significant interest in the peer review communications, Ohio does appear to have the more significant relationship with the peer review documents: an Ohio healthcare provider was the subject of the documents, and they were generated in Ohio by an Ohio hospital. However, as the *Restatement* ex-

---

disputes. There is no Kentucky case law indicating that Kentucky has ever adopted or applied § 145(1) of the *Restatement,* which states that "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which ... has the most significant relationship to the occurrence and the parties...." *Restatement (Second) of Conflict of Laws* § 145 (1971). Further, the case of *State Farm Mutual Auto. Ins. Co. v. Marley, supra,* relied on by *Major, supra,* was a contract dispute that specifically cited only § 188 from the *Restatement.* In that case, Justice Cooper explained in his dissent that although the traditional rule in Kentucky "has been that the validity of

a contract is to be determined by the laws of the state in which it was made ... [t]he modern test is 'which state has the most significant relationship to the transaction and the parties.' " *Marley,* 151 S.W.3d at 41–42 (Cooper, dissenting) *quoting Restatement of Conflict of Laws 2d,* § 188 (1971). Although this Court's blanket statement in *Major, supra,* may be overbroad in the sense that only certain sections of the *Restatement (Second) of Conflict of Laws* have actually been adopted in Kentucky, when read in context with prior case law and *Marley, supra,* it does not alter the precedent that in tort actions, Kentucky law will apply if Kentucky has any significant contacts with the action.

plains, even if Ohio had the more significant relationship, a special reason must still exist before a Kentucky court will apply another state's law excluding evidence when Kentucky law plainly favors admission. No such reason exists in this case. Moreover, due to Kentucky's longstanding precedent deeming peer review documents to be discoverable in medical malpractice actions, the trial court was clearly justified in applying Kentucky law. Because the trial court did not act erroneously in applying Kentucky law or in requiring Saleba to comply with Fiser's discovery requests, the Court of Appeals did not abuse its discretion in denying Saleba's petition.

## II. Kentucky Continues to Recognize the Discoverability of Peer Review Materials in Medical Malpractice Actions.

■ Alternatively, Saleba argues that if this Court holds that Kentucky law applies to this action, we should consider overruling *Sisters of Charity Health Systems, Inc. v. Raikes*, 984 S.W.2d 464 (Ky.1998), and adopting the position that peer review documents are privileged in malpractice suits against healthcare providers. *Sisters of Charity Health Systems, supra,* squarely addressed the issue of whether KRS 311.377(2) extends the peer review privilege to medical malpractice suits. *Id.* Finding that it does not, this Court held "that the peer review privilege created by KRS 311.377(2) is limited to suits against peer review entities as referred to and protected against in Subsection 1 of the statute." *Id.* at 470. This Court explained that

> the General Assembly's intent and purpose [in enacting KRS 311.377(2) ] was *not* to hinder an aggrieved patient's search for the truth in a medical malpractice suit against a negligent physician or hospital. The Preamble to the

1990 Act plainly states that it was enacted for the protection of peer review participants. Appellants, in their capacity in the cases at bar as party-defendants in a medical malpractice suit, are not included in this class because they have not been sued for any action taken in the course of performing a peer review. Simply put, the statute was not enacted for the protection of defendants in a medical malpractice suit.

*Id.* at 469. This Court reiterated its holding that KRS 311.377(2) does not protect peer review records in medical malpractice suits in *McFall v. Peace, Inc.,* 15 S.W.3d 724, 726 (Ky.2000).

■ Despite this well-established precedent, Saleba contends that this Court misinterpreted KRS 311.377(2) in *Sisters of Charity Health Systems, supra,* and that "the time has come" for the Court to revisit that decision. We disagree. Stare decisis requires this Court to follow precedent set by prior cases, and this Court will only depart from such established principles when "sound reasons to the contrary" exist. *Hilen v. Hays,* 673 S.W.2d 713, 717 (Ky.1984); *Gilbert v. Barkes,* 987 S.W.2d 772 (Ky.1999). Although Saleba contends that this Court's refusal to protect peer review documents in medical malpractice cases frustrates the purpose of the privilege and undermines the greater goal of improving healthcare, Saleba has not presented compelling reasons to justify discarding over twenty years of precedent regarding the interpretation of KRS 311.377(2). Furthermore, if Kentucky's legislature found that this Court's decision in *Sisters of Charity Health Systems, supra,* truly frustrated the purpose of KRS 311.377(2), the legislature has had over ten years to amend that statute to include a clear, unmistakable prohibition against discovery of peer review documents in malpractice suits against healthcare providers.

It has not done so. Therefore, we reiterate that KRS 311.377(2) does not extend the privilege for peer review documents to medical malpractice suits.

### CONCLUSION

Saleba and The Good Samaritan Hospital are not entitled to a writ because the trial court did not act erroneously in applying Kentucky law and then requiring the production of certain peer review documents. Even assuming Ohio had the more significant relationship to the peer review documents, no special reason existed in this case justifying applying Ohio law and ignoring Kentucky's strong precedent allowing the discovery of peer review documents in medical malpractice suits. Because the trial court correctly applied Kentucky law and because Kentucky case law clearly does not extend the privilege in KRS 311.377(2) to peer review documents sought in medical malpractice actions, the trial court did not act erroneously in requiring disclosure of the requested peer review records. Thus, we affirm the Court of Appeals' denial of the petition for a writ of prohibition.

All sitting. All concur.