**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0357n.06

**No. 09-5660**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MICHAEL FLINT, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| LIBERTY INSURANCE CORPORATION, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

**FILED**
**Jun 09, 2010**
LEONARD GREEN, Clerk

BEFORE: KEITH, CLAY, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiff Michael Flint appeals the district court's order granting summary judgment in favor of his automobile insurer, defendant Liberty Insurance Corporation ("Liberty"). Because we hold that Kentucky choice of law principles favor the application of Indiana law to Flint's underinsured motorist policy, we affirm the judgment of the district court.

I.

On August 5, 2005, Flint was injured in a two-vehicle accident in Danville, Kentucky. The driver of the second vehicle, Craig A. Stinson, carried an automobile insurance policy with a $100,000 per-person bodily-injury limit. At the time of the accident, Flint was driving his 2004 Cadillac CTS, which was titled and registered in Indiana.

Stinson's insurer paid Flint $100,000. Thereafter, Flint filed a claim with his automobile insurer, Liberty, seeking underinsured motorist benefits ("UIM"). His 2002 Liberty automobile policy, No. A07-248869582-002 (hereinafter "policy"), was written as an Indiana policy and contained a UIM endorsement provision with policy limits of $250,000 (for each insured) and an off-set provision under Indiana law for "all sums paid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible." Based on this off-set provision, Liberty informed Flint that his maximum UIM benefit under Indiana law was $150,000 because he had received $100,000 from Stinson's insurer.

On December 3, 2007, Flint filed a complaint in Boyle County Circuit Court in Kentucky seeking a declaration of his insurance benefits under the UIM provision of his Liberty policy. According to Flint, his UIM benefits were governed by Kentucky law, rather than Indiana law, because Kentucky had the most significant relationship with the insurance contract and the parties. Liberty removed the complaint to the Eastern District of Kentucky pursuant to 28 U.S.C. §§ 1332, 1441, and 2201(a).

In its order granting summary judgment and declaratory relief in favor of defendant Liberty, the district court accurately stated the relevant facts:

> In 1995, Plaintiff Michael Flint ("Flint") moved to Louisville, Kentucky. In 2000, Flint purchased a farm in Deputy, Indiana, and owned other commercial and rental properties in Indiana. In 2005, Flint moved his government consulting business from Louisville to Frankfort, Kentucky. Flint split his time between his homes in Louisville and Indiana. He renovated the Indiana home on weekends during the warm months. Flint listed the Indiana home as his residence on his 2004 and 2005 federal income tax returns. He also testified that he told the Indiana Farm Service Agency that he was an Indiana resident.

Flint's relationship with Defendant Liberty Insurance Corp. ("Liberty") began in 2000. Liberty insurance agent Matt Sturgeon ("Sturgeon"), working in Louisville, Kentucky, sold Flint an auto insurance policy to cover Flint's 1999 GMC Yukon.

In June 2002, Flint purchased a 2001 GMC Sierra truck from his friend, an Indiana auto dealer. Flint permitted his friend to register the vehicle in Indiana. Flint testified that he knew Indiana insurance rates for the Sierra were less than Kentucky rates, although he did not remember specific rates. He was informed that he needed to register the vehicle in Indiana to receive the Indiana insurance rates. Flint stated that he purchased the vehicle for use on his Indiana farm. The truck was titled and registered in Indiana and Flint purchased insurance for the vehicle from Liberty through Sturgeon. The policy was written in Indiana because the Sierra was registered in Indiana, Flint held an Indiana driver's license, and Flint requested an Indiana policy, in part, to save money.

In April 2005, Flint traded the Sierra for a 2004 Cadillac CTS []. The Cadillac was purchased and registered in Indiana by the same friend that purchased the Sierra. On May 10, 2005, Flint substituted the Cadillac for the Sierra on his auto policy with Liberty. He listed his residence as Deputy, Indiana, on his "Request for Auto Policy Change" form. Under the terms of the policy, Flint's insurance included underinsured motorist ("UIM") coverage up to a maximum of $250,000 per person. Flint's UIM endorsement, written in Indiana, states, in part:

LIMIT OF LIABILITY

A. The limit of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. . . .

B. The limit of liability shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. . . .

\* \* \*

D. [Liberty] will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

(Internal citations omitted.)[1]

The parties filed cross-motions for summary judgment in December 2008. The parties agreed that if Indiana law applied, Flint's maximum UIM benefit was $150,000 because of the $100,000 payment Flint received from Stinson's insurer, but if Kentucky law applied, his maximum UIM benefit was $250,000. Thus, the sole issue before the district court was whether Kentucky or Indiana law applied to Flint's UIM policy. The district court ruled that Flint's UIM policy was governed by Indiana law and entered judgment in favor of Liberty.

Flint timely appeals.

---

[1]The policy's UIM provision reflects Ind. Rev. Code § 27-7-5-5(c)(1)(A), which permits a reduction for "the amount paid in damages to the insured by or for any person or organization who may be liable for the insured's bodily injury." "Other insurance" clauses are valid and enforceable under Indiana law. *Pafco Gen. Ins. Co. v. Providence Wash. Ins. Co.*, 587 N.E.2d 728, 729 n.2 (Ind. Ct. App. 1992) ("'Other insurance' clauses limit coverage when coverage under another policy is concurrently available so as to preclude stacking or double recovery of uninsured motorists coverages."). Uninsured and underinsured motorist statutes

> are remedial provisions that are not intended to serve as a substitute for comprehensive personal liability insurance, but rather to provide protection for the innocent party by making the insurance carrier stand as the insurer of the uninsured motorist, and enabling the insured to recover from his or her own insurer for injuries caused by an uninsured motorist. In some states, uninsured motorist coverage is designed to provide protection for the motoring public from injuries caused by uninsured motorists and hit-and-run motorists, and to protect innocent persons from the negligence of unknown or impecunious tortfeasors.

81 Am. Jur. Trials § 425 (2009). UIM coverage is unique insofar as it is personal to the insured, whereas standard automobile insurance follows the vehicle. *Id*.

II.

We review de novo the district court's choice of law ruling. *Mill's Pride, Inc. v. Cont'l Ins. Co.*, 300 F.3d 701, 704 (6th Cir. 2002); *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991). When sitting in diversity, a federal court "appl[ies] the law, including the choice of law rules, of the forum state." *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003). Kentucky is the forum state.

"Kentucky has consistently applied § 188 of the *Restatement (Second) of Conflict of Laws* to resolve choice of law issues that arise in *contract* disputes." *Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009). "Kentucky has ample case law explaining that . . . [Section 188(1) of the] *Restatement's* 'most significant contacts' test applies to contract disputes." *Id.* (citing *Breeding v. Mass. Indem. & Life Ins. Co.*, 633 S.W.2d 717, 719 (Ky. 1982) (holding that in disputes involving the "validity of a contract . . . [t]he modern test is which state has the most significant relationship to the transaction and the parties.")).

Section 188 of the Restatement (Second) states that:

(1)    The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2)    In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

      (a) the place of contracting,
      (b) the place of negotiation of the contract,
      (c) the place of performance,

(d) the location of the subject matter of the contract, and
(e) the domicil, residence, nationality, place of incorporation and
place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect
to the particular issue.

(3)   If the place of negotiating the contract and the place of performance are in the
same state, the local law of this state will usually be applied, except as otherwise
provided in §§ 189-199 and 203.

Restatement (Second) Conflict of Laws § 188 (1971).

"Under this approach, the court hearing the case must apply the law of that jurisdiction
which, 'because of its relationship or contact with the occurrence or the parties, has the greatest
concern with the specific issue raised in the litigation.'" *Harris Corp. v. Comair, Inc.*, 712 F.2d
1069, 1072 (6th Cir. 1983) (quoting *Breeding*, 633 S.W.2d at 719); *Bonnlander,* 949 S.W.2d at 620
("[I]t has been held in contract actions that the law of the state with the greatest interest in the
outcome of the litigation should be applied.").

A.

Flint primarily argues that the district court placed too much emphasis on the "law of the state
of the insurance contract[,]" asserting that this factor "trump[ed] all other considerations[.]"
According to Flint, Kentucky has the most significant relationship to the UIM policy and the parties
in the present case because:  (1) he filled out his application for automobile insurance in Kentucky;
(2) he signed it in Kentucky; (3) he used a Kentucky mailing address; (4) he paid all insurance
premiums from his Kentucky bank account; (5) his primary business and place of employment is in
Kentucky; (6) the accident occurred in Kentucky; and (7) his family lives in Kentucky.  At the time

of the 2005 accident, Flint also maintained a residence in Kentucky. Flint's argument focuses upon Restatement (Second) Conflict of Laws § 188 (2) (a)-(c) and (e), which considers the place of contracting, the place of negotiating the contract, his Kentucky residence, and his employment in Kentucky.

Liberty responds that the great weight of authority under Kentucky law supports the district court's decision to apply Indiana law to Flint's UIM policy. We agree. Indeed, the majority of Kentucky case law addressing automobile accidents in Kentucky that involve Indiana residents insured by Indiana policies apply Indiana law to determine the scope of the insured's UIM benefits.

In *Lewis v. American Family Insurance Group,* 555 S.W.2d 579 (Ky. 1977), an Indiana driver and passenger in a vehicle registered and insured in Indiana were involved in a two-car accident with a vehicle driven by an uninsured Kentucky resident. 555 S.W.2d at 581. The injured Indiana plaintiffs filed a lawsuit in Kentucky against the Kentucky driver and their own insurer, which had issued two automobile insurance policies – to the driver and the driver's uncle (who owned the vehicle) – both of which included uninsured motorist coverage. The question in *Lewis* was whether the law of Indiana or that of Kentucky would govern the question of plaintiffs' uninsured motorist coverage. *Id.*

The Supreme Court of Kentucky concluded that where Indiana drivers of an Indiana registered automobile seeking UIM coverage under an Indiana-issued automobile policy for injuries sustained in Kentucky, Kentucky courts should apply Indiana law to interpret the contract of

insurance. *Id.* at 582. The *Lewis* court quoted Restatement (Second) of Conflict of Laws § 193

(1971) as relevant to its choice of law analysis:

> Contracts of Fire, Surety or Casualty Insurance:
>
> The validity of a contract of fire, surety or casualty insurance and the rights created thereby *are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy*, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in sec. 6 to the transaction and the parties, in which event the local law of the other state will be applied.

*Id.* (emphasis added). After reciting §§ 188 and 193 from the Restatement (Second) of Conflict of

Laws, the *Lewis* court held that "[b]ecause the insurance contracts . . . were entered into in Indiana

between Indiana parties and concerned automobiles which were licensed and garaged in Indiana, we

are of the opinion that Indiana law should govern the rights and liabilities of the parties under these

contracts." *Id.*

Similarly, in *Bonnlander*, several insureds from Indiana were injured in an automobile

accident in Kentucky. 949 S.W.2d at 619. The insureds had automobile policies written under

Indiana law that were provided by out-of-state insurance companies that conducted business in

Kentucky. *Id.* The appellants argued that Ky. Rev. Stat. § 304.39.100(2) required the out-of-state

insurance companies to provide the same UIM coverage as required under Kentucky law,

notwithstanding the fact that the policies at issue were written under Indiana law. *Id.* at 621.

According to the *Bonnlander* court:

> [a]ppellants [] maintain that because appellee insurance companies were authorized to do business in the state of Kentucky and each filed a "Declaration of Compliance with No-fault Insurance Requirements," they must provide underinsured motorists'

coverage to appellants pursuant to Kentucky law. The declarations filed by appellees pursuant to KRS 304.39-100(2) only require that appellees provide basic reparations benefits and the statutory minimum tort liability insurance on any covered vehicle while it is in the state of Kentucky. There is no requirement that they provide underinsured motorists coverage to their insureds. This is in keeping with the public policy of Kentucky's Motor Vehicle Reparations Act, which is to protect Kentucky residents from out-of-state vehicles which come into Kentucky and cause accidents and have inadequate or no insurance. It follows that basic reparations benefits and minimum tort liability insurance go with the vehicle, while underinsured motorists coverage is personal to the insured.

*Id.* at 620-21. Consequently, the *Bonnlander* court held that Ky. Rev. Stat. § 304.39.100(2) did not require a foreign insurance company doing business in Kentucky to provide the minimum UIM coverage required under Kentucky law for automobile insurance policies written in other states. *Id.*

Finally, *Owens v. Declark*, No. CIV. A94-265, 1995 WL 912492, at *1 (E.D. Ky. 1995), *aff'd* 134 F.2d 372 (6th Cir. 1998) (unpublished opinion), also lends support to *Lewis* and *Bonnlander*. In *Owens*, an Indiana resident was injured in an automobile accident in Kentucky where the insured's passenger was covered by an Indiana policy. *Id.* Subsequently, a dispute arouse between the insurer and the injured passenger regarding whether the policy's UIM coverage applied. *Id.* Kentucky law provided coverage and Indiana law did not.[2] The district court ruled that Indiana law applied to the insured's UIM policy, relying on *Lewis* and the Restatement (Second) Conflicts of Laws. *Id.*

---

[2]Specifically, pursuant to Indiana law and the language of the plaintiffs' policies, the defendant was not an underinsured motorist because his total insurance coverage of $125,000 per individual was greater than the UIM limit contained in the plaintiffs' policies. Although the plaintiffs had two separate policies, each policy contained anti-stacking language for underinsured motorists. *Owens*, 134 F.3d 372, at *1.

On direct appeal, we agreed, citing *Lewis* and *Bonnlander*, holding "that the district court properly held that Indiana, not Kentucky, law applies, because Kentucky was only the site of the accident. The significant contacts in this case between Mr. and Mrs. Owens [the injured plaintiffs] and State Farm [their insurer] were in Indiana." *Owens*, 134 F.3d 372 at *2. As in *Lewis*, we concluded that Kentucky had no significant interest in the outcome of the litigation because the district court was interpreting policies written under Indiana law that intended to provide UIM coverage to Indiana residents. *Id.*

The same result was reached in *Hammer v. State Farm Mutual Automobile Insurance Co.*, 950 F. Supp. 192 (W.D. Ky. 1996) where the plaintiff driver, an Indiana resident, was injured in an automobile accident in Kentucky involving an underinsured Kentucky motorist. *Id.* at 193. Once again, the injured plaintiff was insured under an Indiana automobile policy that included UIM coverage. Nevertheless, the driver argued that Kentucky law governed the UIM provision of her two Indiana policies because Kentucky law provided more favorable coverage. There, the district court applied Indiana law, relying on *Lewis* and *Owens*, for the proposition that Indiana had the most significant interest in the outcome of the litigation. *Id.* at 195.

In the present case, under *Lewis*, *Owens*, *Bonnlander*, and *Hammer*, Kentucky choice of law principles almost exclusively favor Liberty's position. Moreover, Flint has failed to persuasively distinguish these cases. Indiana has a more significant interest in the interpretation of Flint's UIM provision because the policy was written as an Indiana policy to cover an Indiana resident who garaged his vehicle in Indiana. Both Flint and Stinson reported that they were Indiana residents,

Flint affirmatively claimed Indiana residency when he executed the policy, he was licensed in Indiana, and he titled and registered his vehicle in Indiana.

Most importantly, Flint took affirmative steps to remove his Kentucky address as his residential address in his 2003 request for policy change. Specifically, the "Describe Change" section in a March 13, 2003 "Request for Auto Policy Change" form reports:

> corrected ph's residential address (*he lives in deputy, indiana*) [sic] and corrected the mailing address. (the current address on his policy is his work address and should have been listed <u>not</u> as his residential address, *but as his mailing address*.) *also, pls delete alternate garaging*.

(Emphasis added.)

Flint's policy change request applied to policy number No. A07-248869582-002, the policy that covered the 2004 Cadillac. At the time of the accident, the 2004 Cadillac was the policy's only insured vehicle. Flint's request that Liberty delete an alternate garaging option and change his residential address to Indiana creates, by implication, an assurance to Liberty that as of March 2003, the insured vehicle was garaged exclusively in Indiana. Thus, Flint's affirmative conduct created an assurance to Liberty that Indiana "was to be the principal location of the insured risk during the term of the policy . . . ." *Lewis,* 555 S.W.2d at 582.

Flint asserts that he made the 2003 policy change when the policy covered the 2001 Sierra and not the 2004 Cadillac, and, thus, the March 2003 policy change is insignificant. We reject this argument. Simply put, it was Flint's decision to substitute the 2004 Cadillac for the 2001 Sierra on his existing policy instead of seeking a fresh policy to cover the Cadillac.

We hold that the district court correctly applied Kentucky choice of law principles and properly ruled that Indiana, not Kentucky, law applied, because Indiana has the most significant relationship with the contract and the parties. The significant contacts between Flint and Liberty were in Indiana. Flint's contacts with Kentucky – his former part-time Kentucky residence, his Kentucky business, and his family – have very little to do with the scope of Flint's UIM coverage as a licensed Indiana driver operating a vehicle titled, insured, and garaged in Indiana, who was involved in an accident with an underinsured Indiana driver. In fact, similar to *Lewis*, Kentucky's only significant connection with the transaction and parties is the site of the accident.

B.

Flint makes a perfunctory argument that the district court should have declined to exercise its jurisdiction over this diversity action under the Declaratory Judgment Act. *See* 28 U.S.C. § 2201(a). The Supreme Court has explained that while the Declaratory Judgment Act provides the district court with the authority to decide such actions, it is "under no compulsion to exercise [its] jurisdiction." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). However, Flint did not raise this argument before the district court.

We have held that where a party "fail[s] to properly raise the issue of the propriety of the district court's exercise of jurisdiction with the district court" under the Declaratory Judgment Act, the party forfeits the claim on appeal. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). Moreover, even if Flint had properly presented this argument (and we conclude that he did not), his appellate brief provides insufficient treatment of this issue. "Issues adverted to in a

*No. 09-5660*
*Flint v. Liberty Ins. Corp.*

perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) (citation and internal quotation marks omitted).

III.

For these reasons, we affirm the order of the district court.